## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| **JOSHUA M. SETTLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 2:18-cv-01177** |
| | ) | |
| **NATHAN SCOTT STEPP,** | ) | |
| **Individually as a member of the** | ) | |
| **West Virginia State Police,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

### DEFENDANT NATHAN SCOTT STEP'S RESPONSE TO PLAINTIFF'S FIRST INTERROGATORIES, REQUESTS FOR PRODUCTION, AND REQUESTS FOR ADMISSIONS TO DEFENDANT NATHAN SCOTT STEPP

**COMES NOW** the defendant, Nathan Scott Stepp, pursuant to Rules 33, 34, and 36 of the Federal Rules of Civil Procedure, and responds to Plaintiff's First Interrogatories, Requests for Production, and Requests for Admissions on Defendant Nathan Scott Stepp, as follows:

### INTERROGATORIES

1.      Please state your full name and any other names by which you have been known; your date of birth; your place of birth; and your current residential and mailing address, residential and mailing address at the time of the incident alleged in the Complaint, and all residential and mailing addresses for the past five (5) years, setting forth the date Defendant lived at each address and the name of every person who resided with Defendant at said address, including those persons' present whereabouts.

ANSWER:     Trooper Nathan Scott Stepp
D.O.B. ████████
Resides with his family at 46 Bailey Road, Spencer, WV for the past five years

2.      Please state the extent of your education (*i.e.* primary school, secondary school, university, professional or trade school, etc.) including the number of years Defendant attended each, whether the course was finished, the diplomas, degrees, certificates awarded, etc.

**EXHIBIT    2**

ANSWER:   a)   Gilmore Elementary (1995-2001)
                b)   Ripley Middle School (2001-2008)
                c)   Ripley High School, Diploma achieved (2004-2008)
                d)   Roane/Jackson Technical Center, Certification achieved (2007-2008)
                e)   West Virginia University at Parkersburg; Associates' Degree in Criminal Justice achieved (2008-2010)

3.     For the last ten (10) years, please list all of your employers and dates of employment, including the address, telephone number, and your job title.

ANSWER:   a)  West Virginia State Police
                   State Trooper
                   Employed 2011 to present
                   WVSP Spencer Detachment, 100 Triplett Road, Spencer, WV
                   (304) 927-0950

                b)  Star Plastic
                   Production Worker
                   Employed 2010 to 2011
                   Star Plastic, 326 Jack Burlingame Road, Millwood, WV 25262
                   (304) 273-0352

                c)  Cedar Lakes Conference Center
                   Maintenance Worker
                   Hired 2007 to 2010
                   Cedar Lakes Conference Center, 82 FFA Drive, Ripley, WV 25271
                   (304) 372-7860

4.     Identify by name, rank, and station or detachment your supervising and/or commanding officer(s) for the last five (5) years, identifying the years each individual was your supervising and/or commanding officer.

ANSWER:   a)  WVSP Spencer Detachment Commander, Sgt. F.L. Hammack
                   Supervised from 2014 to present
                b)  WVSP Clay/Calhoun Detachment Commander, Sgt. B.L. Keiffer
                   Supervised from March 2017 to May 2017
                c)  WVSP South Charleston Detachment Commander, Sgt. B.K. Hammontree
                   Supervised from 2013 to 2014

5.     Have you ever been suspended or placed on leave from the WV State Police? If so, for each such instance, please state: (a) when you were suspended or placed on leave; (b) if you were placed on leave, what type of leave (e.g., without pay, administrative, military, etc.);

(c) when the suspension/leave ended; and (d) a detailed description of the reasons for said suspension/leave.

ANSWER:   July 2017 – November 2017  Granted Military Leave for Army Basic Training at Fort Benning, GA as ordered by the U.S. Army National Guard.

September 2018 – Two days Administrative Leave while an internal investigation took place regarding an officer involved shooting. Returned to full duty status following the investigation and a psychological examination.

6.      Please state whether you have been a party in any other civil action in the past ten (10) years and, if so, for each civil action, please state: (a) the date the action was filed; (b) nature of the action; (c) the name of the court, case style, and case number; and (d) the disposition of the action.

ANSWER:   One.

    a) Date of Lawsuit:  On or about September 23, 2018;
    b) Plaintiff in this lawsuit alleged deadly force in an Officer involved shooting that was not justified;
    c) United States District Court for the Southern District of West Virginia
       Civil Lawsuit
       Case Number: 2:18-cv-01281
    d) The lawsuit is pending at this time.

7.      Please identity any and all prior complaints (written or otherwise) of excessive force against you while employed as a police officer and/or West Virginia State Trooper, and for each such complaint, identify:

    a) The date, time, and location of the event(s) giving rise to the complaint;

    b) The name, last known address, and telephone number of the complaining individual(s);

    c) A description of the events giving rise to the complaint;

    d) Whether an investigation (by your employer or any other law enforcement or investigative agency) was conducted and if so, by whom;\

    e) Whether the complaint resulted in you being suspended or placed on leave (identifying which);

    f) Whether a civil action was filed against you arising out of said complaint; and

      g) Whether a criminal investigation was launched and/or criminal charges were brought against you arising out of said complaint (identifying which or both).

ANSWER:    One prior complaint.

      a) September 6, 2016, approximately 1400 hours
           Located in Spencer, Roane County, West Virginia
           Officer involved shooting;
      b) Bradley Cottrell, on behalf of the Estate of Bernard Dale Cottrell;
      c) Bernard Cottrell brandished a shotgun at Law Enforcement during a high speed pursuit on September 6, 2016. Prior to the pursuit, Bernard Cottrell traveled to the residence of Bradley Cottrell and made threats to kill him (Bradley Cottrell) and his family. Bernard Cottrell was shot and killed at the hands of Law Enforcement, including Trooper N.S. Stepp.
      d) A civil lawsuit was filed against all Law Enforcement Officers involved.
      e) Internal Criminal Investigation was conducted the WVSP. The investigation was presented to the Jackson County Prosecuting Attorney, a special prosecutor assigned to this investigation, and it was ruled no criminal action would be taken.

    **8.**    Have you ever been the subject of a criminal investigation? If so, please state: (a) what agency (state and/or federal) conducted the investigation; (b) when you were notified you were under investigation and by whom; (c) the name, address, and telephone number of any and/all investigators or agency officials who have contacted you pursuant to said investigation; (d) what you are being investigated for; and (e) a description of the circumstances or events giving rise to said investigation.

ANSWER:    Yes.

    a)    Investigated by the WVSP;
    b)    Notified September 6, 2018 by Cpt. D. Lemmon of the WVSP
    c)    1st Sgt. O.K. Starsick conducted the investigation;
           721 Jefferson Road, South Charleston, WV
           (304) 746-2100
    d)    Investigation was conducted per Department Policy pursuant to an Officer involved shooting;
    e)    An individual brandished a shotgun at Law Enforcement during a high speed pursuit on September 6, 2018. Prior to the pursuit, this individual traveled to the residence of his son and made threats to kill him and his family. This individual was shot and killed at the hands of Law Enforcement, including Trooper N.S. Stepp.

9.     Please identify any and all internal/criminal investigations by the West Virginia State Police into you or your conduct since the beginning of your employment as a West Virginia State Trooper.  This includes any currently pending investigations.  For each, please include: (a) when you were notified you were under investigation and by whom; (b) the name, address, and telephone number of any and/all investigators or officials who contacted you; (c) what you were being investigated for; (d) a description of the circumstances or events giving rise to said investigation; and (e) the outcome of the investigation.

ANSWER:     None into contact.

10.     Have you ever testified in a deposition, hearing, or trial (civil or criminal) pertaining to the propriety of your conduct as a West Virginia State Trooper?  If so, please identify the name of the court, the style of the case, and the case number for any such deposition, hearing, or trial.

ANSWER:     No.

11.     If Defendant maintains that he did not inflict the injures described in paragraphs Nos. 56 and 57 of the Complaint, please explain who or what caused Plaintiff to suffer these injuries, specifically but not limited to, how Plaintiff received multiple lacerations to the *back* of his head that required staples to close.

ANSWER:     These injuries were sustained by the Plaintiff as a result of resisting the Defendant, attempting to flee from the Defendant and attempting to disarm the Defendant.

12.     Please describe in detail how the blood on your hands and arms (shown in the photographs on pages 6 and 7 of the Complaint) got there.

ANSWER:     The blood shown on the Defendant in the photographs was caused by blood transfers from the Plaintiff, while being forced to wrestle with the Plaintiff in order to gain control of him.

13.     Please describe in detail how the blood on the pavement and along the side of the road (shown in the photographs on page 10) got there.

- 5 -

ANSWER:  The blood on the roadway came from injuries that the Plaintiff sustained while resisting the Defendant, while trying to flee from the Defendant and trying to disarm the Defendant.

## RESPONSE TO REQUESTS FOR PRODUCTION OF DOCUMENTS

**1.**    Please produce all documents or other tangible things reviewed or relied on in responding to the above interrogatories.

RESPONSE:  Defendant relied upon his knowledge and memory in answering the Interrogatories.

**2.**    Please produce a complete copy of the incident report and the entire criminal and/or investigative file for the traffic stop, detainment, and arrest of Plaintiff as described in the Complaint.  Please include all documents, audio statements, videos, photographs (including, but not limited to, mug shots), and all other tangible evidence pertaining to the detainment and arrest of Plaintiff.

RESPONSE:  See attached.

**3.**    Please produce a complete copy of the West Virginia State Police handbook and/or manual containing department policies and procedures.

RESPONSE:  These documents can be accessed on line.

**4.**    Please produce any and all West Virginia State Police training manuals or other training materials (used at the West Virginia State Police Academy or otherwise) pertaining in any way to the use of force.

RESPONSE:  Use of Force Policy can be accessed on line.

**5.**    Please produce any and all West Virginia State Police policies, guidelines, protocols, or regulations pertaining in any way to the use of force.

RESPONSE:  Use of Force Policy can be accessed on line.

**6.**    Please produce a complete employee and/or personnel file for Defendant.  This request is subject to entry of an appropriate protective order.

RESPONSE:  Will be produced following entry of a Protective Order.

     **7.**    Please produce any and all documents (including supporting documentation, like photographs, audio statements, or videos) referring or relating to evaluations, promotions, demotions, or disciplinary actions (including suspensions or leaves) of Defendant as a West Virginia State Police officer in the last ten (10) years.

RESPONSE:   Information will be contained in Personnel file.

     **8.**    Please produce all written complaints or allegations of excessive force or other impropriety (including any supporting documentation, including audio files, photographs, or videos) levied against you in your capacity as a West Virginia State Trooper in the last ten (10) years.

RESPONSE:   This request is being researched and will be supplemented.

     **9.**    Please produce any and all documents (including any supporting documentation, including audio files, photographs, or videos) referring or relating to any criminal investigation by any state, federal, or other entity into your conduct as a West Virginia State Trooper in the last ten (10) years.

RESPONSE:   This request is being researched and will be supplemented.

     **10.**    Please produce a complete copy of any and all Criminal Investigation Reports (including any supporting documentation, including audio files, photographs, or videos) pertaining in any way to the propriety of your conduct as a West Virginia State Trooper.

RESPONSE:   See response to Request for Production No. 9.

     **11.**    Please produce a copy of any dash camera or body camera video footage from April 19, 2017 depicting Plaintiff, his detainment, or arrest.

RESPONSE:   See Response to Request for Production No. 2.

     **12.**    Please produce any and/or all written communications, including but not limited to e-mails, letters, notes, memos, audio transcriptions, logs, dispatches, etc. between or among you any other employee or agent of the West Virginia State Police referring or relating to Plaintiff or the incidents described in the Complaint.

RESPONSE:   See Response to Request for Production No. 2.

13.    Please produce all recorded communications, including but not limited to, statements, phone calls, dispatches, etc. referring or relating to Plaintiff or the incidents described in the Complaint.

RESPONSE:   See Response to Request for Production No. 2.

14.    Please produce all documents or other tangible things in your possession referring or relating to Plaintiff or the incidents described in the Complaint.

RESPONSE:   See Response to Request for Production No. 2.

15.    Please produce all photographs or videos referring or relating to Plaintiff or the incidents described in the Complaint.

RESPONSE:   See Response to Request for Production No. 2.

16.    Please produce a copy of the curriculum vitae of any and all expert witnesses that you have consulted or retained in this case.

RESPONSE:   Objection. This Request is premature.   This request will be supplemented in accordance with the Scheduling Order.

17.    Please produce any and all reports prepared by said expert(s) pertaining to this case, all documents or other evidence relied upon by said expert, all documents produced or created by said expert in connection with this case, all documents reviewed by said expert in connection with this case, and any other document or tangible thing relied upon by said expert in forming his or her opinions in this case.

RESPONSE:   See Response to Request for Production No. 16.

18.    Please produce copies of any and all civil claims, legal complaints, or lawsuits which have been filed against you in the last ten (10) years.

RESPONSE:   See Responses to Interrogatories. Copies of documents requested are available at the Clerk's office.

19.    Please produce copies of any and all criminal processes (*e.g.*, complaints, indictments, subpoenas, etc.) that have been issued to or against you in the past ten (10) years relating in any way to the propriety of your conduct as a West Virginia State Police Trooper.

RESPONSE:   There are no documents responsive to this request.

- 8 -

**20.**   Please produce copies of any and all documents contained in the employee personnel file of Defendant from any prior employers, and/or any investigative or disciplinary file, from the same place.

RESPONSE:   Defendant's Personnel file will be produced pursuant to the appropriate Protective Order.

**21.**   Please produce a copy of any and all documentation that you intend to use at trial.

RESPONSE:   Objection.   Premature.   Defendant does not know what documentation will be used at trial.

**22.**   Please produce a copy of any and all statements (written or recorded) from any persons regarding the allegations that are the subject of Plaintiff's Complaint.

RESPONSE:   See Response to Request for Production No. 2.

**23.**   Please produce a copy of any grand jury transcript, deposition transcript, or trial transcript containing testimony given by you in any civil or criminal matter pertaining in any way to the propriety of your conduct as a West Virginia State Trooper.

RESPONSE:   No such documents are in the possession of this Defendant.

**24.**   Please produce a copy of any internal West Virginia State Police memoranda regarding the West Virginia State Police's excessive force policies or procedures in the last ten (10) years.

RESPONSE:   See response to Request for Production No. 4.   No such documents are in the possession of this Defendant.

**25.**   Please produce a copy of any written communications (including but not limited to, e-mail, letters, memos, etc.) between or among you or any other employee or agent of the West Virginia State Police regarding the West Virginia State Police's excessive force policies or procedures.

RESPONSE:   No such documents are in the possession of this Defendant.

**26.**   Please produce a copy of all West Virginia State Police policies, procedures, and/or manuals pertaining to West Virginia State Troopers being placed on "military leave."

- 9 -

RESPONSE:   This policy is available on line.

27.   Please produce all documents pertaining to each and every instance of you being placed on "military leave" from the West Virginia State Police.

RESPONSE:_  See Defendant's Personnel file.

## REQUESTS FOR ADMISSIONS

**1.**   Admit that when you approached Plaintiff's vehicle, he showed you his hands.

ANSWER:   Admit.

**2.**   Admit that Plaintiff was unarmed.

ANSWER:   Deny.

**3.**   Admit that no weapon was found in Plaintiff's vehicle.

ANSWER:   Admit.

**4.**   Admit that when you pulled Plaintiff from his vehicle, there was no blood on his head, face or neck.

ANSWER:   Admit upon information and belief and information known to Defendant at that moment.

**5.**   Admit that when you pulled Plaintiff from his vehicle, there were no cuts or lacerations on his head, face, or neck.

ANSWER:   Admit upon information and belief and information known to Defendant at that moment.

**6.**   Admit that when you pulled Plaintiff from his vehicle, there was no blood on his clothing.

ANSWER:   Admit upon information and belief and information known to Defendant at that moment.

- 10 -

7.     Admit that there was no damage to the driver's side windshield of Plaintiff's vehicle involved in the incident described in the Complaint.

ANSWER:     Objection.  No windshield damage is described in complaint.

8.     Admit that your left wrist was handcuffed to Plaintiff's left wrist while you pepper sprayed him.

ANSWER:     Deny.

9.     Admit that during the detainment of Plaintiff, he asked you to put him in your West Virginia State Police vehicle.

ANSWER:     Admit, but Plaintiff continued to resist.

10.     Admit that during the detainment of Plaintiff, he asked you several times to put him in your West Virginia State Police vehicle.

ANSWER:     Admit, but Plaintiff continued to resist.

11.     Admit that while detaining Plaintiff, you told him, "you move again, I'll break your finger."

ANSWER:     Admit.

12.     Admit that while Plaintiff was on the ground, you told him, "understand me, I will shoot you."

ANSWER:     Admit.  Plaintiff was told that if he reached for a weapon or attempted to flee.

13.     Admit that while pepper spraying Plaintiff, he told he could not breathe.

ANSWER:     Admit.

14.     Admit that while pepper spraying Plaintiff, he told you, "I'm not fighting you."

ANSWER:     Admit.  Plaintiff stated that while fighting with the Defendant and attempting to flee.

- 11 -

15.     Admit that Plaintiff told you, "you're cutting me," referring to his left wrist which was handcuffed to your left wrist.

ANSWER:     Deny as stated.

16.     Admit that you told Plaintiff, "you're cutting my hand too, it's fine."

ANSWER:     Admit Defendant stated "You're cutting me too."

17.     Admit that Plaintiff told you, "officer you're hurting me."

ANSWER:     Admit Plaintiff stated while continuing to resist.

18.     Admit that you beat Plaintiff with your baton/night stick.

ANSWER:     Deny as stated.

19.     Admit that your left wrist was handcuffed to Plaintiff's left wrist while you beat him with your baton/night stick.

ANSWER:     Deny.

20.     Admit that during the beating of Plaintiff, he asked you to put him in your West Virginia State Police vehicle.

ANSWER:     Deny as stated.

21.     Admit that during the beating of Plaintiff, he asked you several times to put him in your West Virginia State Police vehicle.

ANSWER:     Deny as stated.

22.     Admit that during the beating, Plaintiff ask you, "please...don't beat me no more."

ANSWER:     Deny as stated.

23.     Admit that you told Plaintiff, "we are going to fight."

ANSWER:     Deny.

24.     Admit that Plaintiff responded, "no we're not...I'm bleeding to death."

- 12 -

ANSWER:      Admit Plaintiff stated that at some point.

    **25.**    Admit that during the beating, Plaintiff asked you to "please quit."

ANSWER:      Deny as stated.

    **26.**    Admit that Plaintiff said "quit beating me."

ANSWER:      Admit Plaintiff said that while continuing to resist.

    **27.**    Admit that during the beating, Plaintiff said, "I'm pooling blood."

ANSWER:      Deny as stated.

    **28.**    Admit that Plaintiff asked you, "don't beat me in the head no more."

ANSWER:      Admit Plaintiff stated that while continuing to resist.

    **29.**    Admit that after the beating, Plaintiff said, "please don't hit me no more."

ANSWER:      Deny as stated.

    **30.**    Admit that after the beating, Plaintiff said, "please, no more."

ANSWER:      Deny as stated.

    **31.**    Admit that after the beating, you told Plaintiff, "man to man, we're done…man to man, we're done, alright?"

ANSWER:      Deny as stated.

    **32.**    Admit that after the beating, Plaintiff asked you, "no more of this?"

ANSWER:      Deny as stated.

    **33.**    Admit that after the beating, you told Plaintiff, "no more of this."

ANSWER:      Deny as stated.

    **34.**    Admit that after the beating, Plaintiff asked you, "no more hitting me?"

ANSWER:      Deny as stated.

    **35.**    Admit that after the beating, you told Plaintiff, "I'm so sorry, straight up, alright?"

ANSWER:    Deny as stated.

NATHAN SCOTT STEPP

By Counsel

Gary E. Pullin, Esq. (WVSB #4528)
Wendy E. Greve, Esq., (WVSB #11045)


**Pullin, Fowler, Flanagan, Brown & Poe, PLLC**
JamesMark Building
901 Quarrier Street
Charleston, West Virginia 25301
Telephone:  (304) 344-0100
Facsimile:   (304) 342-1545
E-Mail:  gpullin@pffwv.com; wgreve@pffwv.com

**SETTLE v. STEPP**
**EXHIBITS TO DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**1ST REQUEST FOR PRODUCTION OF DOCUMENTS**

1.  WVSP Report of Response to Resistance or Aggression

2.  WVSP Report of Criminal Investigation

3.  Photographs of Plaintiff

4.  DVD-R containing video; audio statement of Plaintiff taken on 4/20/2017 by Sgt. Keefer of the WVSP

**EXHIBIT 1**

WVSP Form #175  Revised 09/15
E REV. '15

**REPORT OF RESPONSE TO**

**RESISTANCE OR AGGRESSION**

Professional Standards #  176099

PROFESSIONAL

MAY 2 3 2017

STANDARDS

Dist Comm _____ 04-28-17
Troop Comm _____ CH  5-12-17
Chief of Field _____ MS 5-24-17
Inspector _____ ECA  5/7/17

**GENERAL INFORMATION:**

| SUPERVISOR: | DETACHMENT: | DATE OF INCIDENT: | TIME OF INCIDENT: |
|---|---|---|---|
| Sergeant B. L. Keefer | Clay | 04/19/2017 | 2230 hours |

| LOCATION OF INCIDENT: |
|---|
| The Daniels Run Road (approximately .7 miles west from SR 16), Millstone, Calhoun County, WV |

**SUBJECT INFORMATION:**

| SUBJECT NAME (LAST, FIRST): | | RACE/SEX: | DOB: | SSN: |
|---|---|---|---|---|
| Settle Joshua | | W/M | | |

| INJURY: | TREATMENT: | SUBJECT RESISTANCE LEVEL: | | HOW USED: |
|---|---|---|---|---|
| 13, 11 | 23, 24 | 52, 53, 55 | 71, 72, 73 | 110, 111, 112, 113 |

| SUBJECT CONTACTED BY SUPERVISOR? IF YES, DATE AND TIME: | STATEMENT TAKEN FROM SUBJECT? IF YES, DATE AND TIME: | SUBJECT PHOTOGRAPHED? |
|---|---|---|
| Yes; April 20, 2017 @ 0115 hours | Yes; April 20, 2017 @ 0115 hours | Yes |

**OFFICER(S) INVOLVED:**

| NAME (LAST, FIRST): | | | RANK: | OFFICER PHOTOGRAPHED? |
|---|---|---|---|---|
| Stepp, Nathan | | | Senior Trooper | Yes |

| INJURY: | TREATMENT: | LEVEL OF RESPONSE: | TYPE OF RESPONSE: | HOW USED: |
|---|---|---|---|---|
| 11, 12 | 20 | 60, 61, 63, 64, 65, | 91, 92, 96, 100 | 111, 112, 113, 118 |

| NAME (LAST, FIRST): | | | RANK: | OFFICER PHOTOGRAPHED? |
|---|---|---|---|---|
| | | | | |

| INJURY: | TREATMENT: | LEVEL OF RESPONSE: | TYPE OF RESPONSE: | HOW USED: |
|---|---|---|---|---|
| | | | | |

| NAME (LAST, FIRST): | | | RANK: | OFFICER PHOTOGRAPHED? |
|---|---|---|---|---|
| | | | | |

| INJURY: | TREATMENT: | LEVEL OF RESPONSE: | TYPE OF RESPONSE: | HOW USED: |
|---|---|---|---|---|
| | | | | |

**WITNESS(ES):**

| NAME (LAST, FIRST): | ADDRESS: | PHONE: |
|---|---|---|
| | | |

| NAME (LAST, FIRST): | ADDRESS: | PHONE: |
|---|---|---|
| | | |

| NAME (LAST, FIRST): | ADDRESS: | PHONE: |
|---|---|---|
| | | |

**TRANSPORTING INFORMATION:**

| TRANSPORTING OFFICER (LAST, FIRST): | FROM: | TO: |
|---|---|---|
| Cpl. J. T. Portillo (accompanied EMS) | Incident Scene | Calhoun County High School football field (Suspect flown to CAMC General) |
| Jones, Patrick | CAMC General | WVSP South Charleston Detachment |
| Jones, Patrick | WVSP South Charleston Detachment | South Central Regional Jail |
| | | |

| INJURY | TREATMENT | SUBJECT RESISTANCE LEVEL | OFFICER'S LEVEL OF RESPONSE | SUBJECT WEAPON USED | OFFICER'S TYPE OF RESPONSE | HOW USED |
|---|---|---|---|---|---|---|
| 09 - Injury not related to Response | 20 - None | 50 - No Resistance | 60 - Physical Presence | 70 - None | 90 - None | 110 - Threatened |
| 10 - No Injury | 21 - Refusal | 51 - Passive Resistance | 61 - Use of Verbal Command | 71 - Hands/Arms | 91 - Hands/Arm | 111 - Grab/Hold |
| 11 - Bruise/Abrasion | 22 - First Aid | 52 - Attempted to flee/escape | 62 - Use of Chemical Weapon | 72 - Fist | 92 - Fists | 112 - Push/Pull |
| 12 - Sprain/Strain | 23 - Paramedic/EMT | 53 - Actively resisted | Before Empty Hand Tactics | 73 - Foot/Leg | 93 - Foot/Leg | 113 - Strike/Hit |
| 13 - Laceration | 24 - Hospital | 54 - Actively resisted and incited bystanders | 63 - Empty Hand Tactics | 74 - Teeth | 94 - Radio | 114 - Bite |
| 14 - Bite | 25 - Personal Physician | 55 - Assaulted Officers | 64 - Use of Chemical Weapon | 75 - Blunt Inst. | 95 - Flashlight | 115 - Throw |
| 15 - Puncture | | | After Empty Hand Tactics | 76 - Cutting Inst. | 96 - Baton | 116 - Slash |
| 16 - Broken Bone | | | 65 - Use of Police Baton | 77 - Rock/Bottle | 97 - K-9 | 117 - Stab |
| 17 - Internal Injury | | | 66 - Use of Lethal Force | 78 - Handgun | 98 - Handgun | 118 - Discharge |
| 18 - Gunshot | | | | 79 - Rifle | 99 - Shotgun | 119 - Other |
| 19 - Other | | | | 80 - Shotgun | 100 - Chemical Agent | |
| | | | | 81 - Vehicle | 101 - Vehicle | |
| | | | | 82 - Other | 102 - Other | |
| | | | | | 103 - Rifle | |

| FAXED TO PROFESSIONAL STANDARDS 746-2400 BY | Sergeant B. L. Keefer | DATE/TIME | 04/20/2017 @ 0300 hours | PAGES | 1 |
|---|---|---|---|---|---|

**"Narrative of Response to Resistance and Aggression involving Senior Trooper N. S. Stepp by Sergeant B. L. Keefer"**

On Wednesday, April 19, 2017, at approximately 2234 hours, Sergeant B. L. Keefer received a telephone call from State Police South Charleston Communications, advising him that Senior Trooper N. S. Stepp had become involved in a short vehicle pursuit, in the Millstone area, of Calhoun County. During that conversation, Sergeant Keefer was also advised that the vehicle being pursued had crashed, resulting in the vehicle overturning. South Charleston Communications verified that no other property had been damaged, as a result of the pursuit. Initially, South Charleston Communcations advised Sergeant Keefer that the suspect driver was in custody, but required medical attention due to injuries he sustained during the crash. South Charleston Communications verified that Senior Trooper Stepp had not been injured, as a result of this incident. South Charleston Communications advised Sergeant Keefer that Trooper First Class J. M. Ellis and Corporal J. T. Portillo were en route to assist Senior Trooper Stepp.

Immediately, Sergeant Keefer attempted to reach Senior Trooper Stepp, on his cell phone, but was unable to reach him; as cellular coverage is abysmal in Calhoun County. Sergeant Keefer contacted First Sergeant O. S. Starsick, and apprised him of the situation. A short time later, First Sergeant Starsick advised Sergeant Keefer that he and Sergeant Hammack would be responding to the scene. Shortly thereafter, Sergeant Keefer received a telephone call from Trooper First Class Ellis, who advised him that the suspect, who still had not been identified, had actively fought with, and attempted to disarm, Senior Trooper Stepp during his arrest. Trooper First Class Ellis further advised that Senior Trooper Stepp had been forced to utilize his expandable baton to subdue the suspect, resulting in the suspect being injured and having to be transported to CAMC General Hospital. With that, Sergeant Keefer traveled to CAMC General Hospital.

Upon arrival at CAMC General Hospital, Sergeant Keefer spoke with Corporal P. A. Jones, who had been detailed to the hospital, in order to watch the suspect. Corporal P. A. Jones informed Sergeant Keefer that the suspect had been identified as Joshua Michael Settle (Sergeant Keefer confirmed that identity through his DMV photograph). Corporal Jones informed Sergeant Keefer that the medical staff had ruled out any major injuries, including the lack of a head concussion, to Mr. Settle. Corporal Jones further advised that the medical staff planned to apply sutures to three cuts in Mr. Settle's head, and he would be released to State Police custody.

On Thursday, April 20, 2017, at approximately 0116 hours, Sergeant Keefer made contact with Joshua Settle, who was lying on a treatment bed, at CAMC General Hospital. At that time, Sergeant Keefer obtained a digitally recorded statement from him. Due to Mr. Settle's being medically treated, Sergeant Keefer did not complete a DPS Form #79, Interview and

Miranda Rights Form, but did verbally read the Miranda Warning to Mr. Settle, while being digitally recorded. During this statement Joshua Settle admitted the following:

- He admitted that he intentionally fled, in the vehicle, from Senior Trooper Stepp, knowing this would be his third offense for driving on a suspended driver's license.
- He admitted that he had previously fled, in a vehicle, from the Spencer Police Department, in a previous incident.
- He admitted that he was afraid to go to jail.
- He admitted that he lost control of the vehicle causing the vehicle to crash and land on its top, while he was fleeing from Senior Trooper Stepp.
- He stated he was compliant with Senior Trooper Stepp, but caught himself saying he fought with the Trooper.
- He stated that Senior Trooper Stepp was "choking" him, while they were on the ground, but admitted to being able to get up to his feet, while only having one handcuff on his left wrist.
- He admitted to swinging the unlatched handcuff at Senior Trooper Stepp, while on his feet.

Sergeant Keefer concluded the interview with Joshua Settle on Thursday, April 20, 2017 at approximately 0132 hours (that interview is attached to this report). Sergeant B. L. Keefer then took several digital photographs of Mr. Settle (a CD containing those digital images is attached to this report).

On Thursday, April 20, 2017, at approximately 0220 hours, Joshua Settle was released from CAMC General Hospital, and transported to the South Charleston Detachment Booking Office. There, he was processed and fingerprinted by Sergeant B. L. Keefer. Corporal P. A. Jones transported Joshua Settle to the South Central Regional Jail, on Thursday, April 20, 2017, at approximately 0300 hours.

During the course of investigating the aforementioned vehicle pursuit, and subsequent response to resistance and aggression, Sergeant Keefer learned the following:

- On Wednesday, April 19, 2017, at approximately 2230 hours, Senior Trooper N. S. Stepp was conducting stationary RADAR, at the intersection of US Route 33 and WV Route 16, in the Millstone area, of Calhoun County. At that time, a blue 1996 Chevrolet Cavalier drove past his position, traveling east on US Route 33, and being operated by Joshua Michael Settle. Senior Trooper Stepp observed that the aforementioned vehicle's registration light was not operable. Senior Trooper Stepp attempted to perform a traffic stop on Mr. Settle, but Mr. Settle actively fled, traveling onto WV Route 16 before hurriedly swerving onto the Daniels Run Road. While attempting to negotiate a curve, and fleeing at a high rate of speed, Mr. Settle

lost control of the vehicle, which struck the ditch embankment, and flipped onto its top.

- Senior Trooper Stepp approached the wrecked vehicle, which still contained Mr. Settle. Senior Trooper Stepp ordered Mr. Settle to exit the vehicle. Then, Mr. Settle actively resisted Senior Trooper Stepp's efforts to place him into handcuffs. Senior Trooper Stepp continued to struggle with Mr. Settle, who refused to comply with verbal commands given by Senior Trooper Stepp. Senior Trooper Stepp utilized several open hand strikes to Mr. Settle's torso area, two short bursts of OC spray to Mr. Settle's facial area, and his expandable baton to deliver several strikes to Mr. Settle's legs which all proved to be ineffective in gaining control of Mr. Settle; who became increasingly enraged, aggressive and violent toward Senior Trooper Stepp. Mr. Settle ripped Senior Trooper Stepp's uniform by grabbing the Trooper, in several attempts to wrestle Senior Trooper Stepp to the ground. Mr. Settle grabbed Senior Trooper Stepp by the gunbelt, in an attempt to overpower the trooper. Mr. Settle began to pull on Senior Trooper Stepp's holster and was successful in unclasping the holster's thumb break, and grabbing Senior Trooper Stepp's pistol by the handle. Senior Trooper Stepp was able to keep control of his pistol, but was forced to deliver expandable baton strikes to the head of Mr. Settle, who was trying to gain control of Senior Trooper Stepp's pistol. Finally, after an approximate six (6) minute, exhaustive fight with Mr. Settle, Senior Trooper Stepp was able to gain control of him and place him into handcuffs.

Sergeant B. L. Keefer obtained a copy of the in-car camera footage from Senior Trooper N. S. Stepp's cruiser (Copy attached). During a larger portion of the physical fighting, both Senior Trooper N. S. Stepp and Mr. Settle are out of view of the camera's field of view. In addition, during this time, audio play-back also cuts out. However, the footage and audio that is captured up unto the period of cut-out corroborates the statement given by that of Senior Trooper N. S. Stepp.

Sergeant B. L. Keefer believes Senior Trooper N. S. Stepp followed protocol as set forth in Policy and Procedure 10-1, in regards to this incident.

Sergeant B. L. Keefer

Clay Detachment Commander

Dist. 4-28-17
Troop. 5-12-17
Chief of Field 5-24-17
Inspector 5/1/17

## STATEMENT OF SENIOR TROOPER N. S. STEPP IN REFERENCE TO RESPONSE TO RESISTANCE OR AGGRESSION INCIDENT ON APRIL 19, 2017

On Wednesday, April 19, 2017, at approximately 2230 hours, S/Trooper N.S. Stepp, hereafter referred to as this Trooper, was conducting stationary patrol at the intersection of US Rt. 33 and WV Rt. 16 in Millstone, Calhoun County, West Virginia. At this time, this Trooper noticed a blue in color 1996 Chevrolet Cavalier, bearing WV-Registration 2PM365, traveling east on US Rt. 33, displaying a defective registration light. this Trooper then activated the emergency lights in effort to initiate a traffic stop at this location on the vehicle. The vehicle then turned north on WV Rt. 16 and began to travel towards Grantsville.

This Trooper followed the vehicle, with the emergency lights activated, for approximately .7 tenths of a mile. While following behind the vehicle, this Trooper noticed that the vehicle traveled across the northbound fog line and then across the double lined center line multiple times. It should be noted that the driver of the vehicle had active the hazards lights and been traveling a moderately low speed, a speed at which led this Trooper to believe that the driver was attempting to locate a wide place in the roadway to pull over. However, when the vehicle neared Daniels Run Road, the vehicle darted left onto it and began to travel at a high rate of speed. At this time, this Trooper contacted the WVSP South Charleston Dispatch and advised that this Trooper was in pursuit of the vehicle.

After traveling approximately .3 tenths of a mile, driver of the vehicle had apparently lost control of the vehicle and ultimately flipped onto its top and came to rest upside down in the ditch line facing east.

This Trooper then exited the patrol vehicle, and began to give the driver of the vehicle, later identified as Joshua Michael Settle, verbal commands to exit the vehicle. After Mr. Settle, the accused, was out of the vehicle, this Trooper then attempted to restrain him and affect the arrest. It was at this time that the accused began to resist this Trooper by refusing to comply with the verbal commands to place his arms behind his back.

The accused then began to attempt to stand up, while this Trooper was applying pressure to him to keep him on the ground. After several attempts, the accused was able to successfully break free from this Trooper's hold on him and stood up. The accused then

began to attempt to pull away from this Trooper after successfully placing one (1) handcuff on him.

During this time, this Trooper gave Mr. Settle countless number of verbal commands to stop resisting this Trooper and to comply with the commands. This Trooper first attempted to deliver to the accused several open handed strikes to his torso in order to gain control of him. This Trooper quickly discovered that these strikes were not affecting the accused and that he was still continuing to try to pull away from this Trooper.

This Trooper then administered two (2) one (1) second bursts of OC Spray to the accused facial area. After the second burst, the accused was still continuing to fight with this Trooper with even more rage. It was at this time that the accused began to strike this Trooper with his left arm and fist in attempts to break free from this Trooper's grip all while screaming for this Trooper to let him go and to stop being mean to him.

The accused's actions caused this Trooper to be pulled approximately one hundred (100) feet from this Trooper's patrol vehicle. This Trooper then began to administer several strikes to thigh region of the accused's legs with the ASP baton. After each strike, the accused appeared to only get more agitated. The accused then pulled into this Trooper and grabbed this Trooper around the torso. At this time, the accused began to drag this Trooper to the ground. This Trooper was able to regain his footing and stood back up with the accused. This Trooper continued to administer strikes with the ASP baton to the accused's legs.

After several minutes of fighting this way, the accused was able to grab this Trooper by the shirt and began to pull this Trooper again to the ground. After the shirt of this Trooper ripped, the accused began to pull on this Trooper's gun belt. The accused began to pull on this Trooper's holster and was able to successful unclasp the restraint to the gun while beginning to pull on the handle of this Trooper's pistol.

This Trooper was beginning to feel a high level of fatigue at this time of the fight. This fatigue, coupled with the fear of the accused being successful in his disarming attempt, in addition to the apparent fact of the ASP baton strikes to the legs being ineffective, caused this Trooper to transition the strikes to the head of the accused.

This Trooper delivered two (2) or three (3) strikes to the head of the accused in a desperate attempt to stop the fight and keep him from succeeding in pulling this Trooper's gun from the holster.

After physically fighting with the accused for approximately six (6) minutes, this Trooper was able to get him under control and secure him in restraints.

Due to injuries which the accused had sustained as a result of the confrontation, he was transported to the Charleston Area Medical Center General via HealthNet for treatment of his injuries. After being released, at approximately 0230 hours, he was transported to the South Central Regional Jail to be housed until the Calhoun County Magistrate Court resumed session.

This Trooper was not injured as a result of this incident.


Respectfully Submitted,

S/Trooper Nathan S. Stepp
West Virginia State Police
Clay Detachment Troop 4

## STATEMENT OF JOSHUA MICHAEL SETTLE – TAKEN BY SERGEANT B. L. KEEFER:

KEEFER:   Okay, let me see what time it is here real quick.  I've got the time as 0116, let me see what the date is on April 20th is what I got, 4-20, uh and you're Joshua Michael Settles, correct?

SETTLE:  Yes Sir

KEEFER:   And your date of birth is January 10th, 1998?

SETTLE:  Yep

KEEFER:   Okay, and your social security number is                    does that sound right?

SETTLE:  Yep

KEEFER:   Where you currently living at Josh, do they call you Josh is that what everybody calls you Josh?

SETTLE:  Josh

KEEFER:   Okay Josh, is it okay if I call you Josh?

SETTLE:  Yes

KEEFER:   And I've told you I'm Sergeant Keefer and you know I'm a state trooper I'm just here to talk to you to get your side of the story

SETTLE:  Appreciate it man, they didn't want to hear it up there

KEEFER:   Uh before I can do this I'm gonna, I do everything the right way Okay so I'm gonna read you something here real quick it's probably something you've had read to you before we're gonna go ahead and do it again to you okay, uh this is your Miranda warning, you know what your Miranda warning is right, just like TV, right

SETTLE:  Inaudible

KEEFER:   You have the right to remain silent anything you say can and will be used against you in a court of law

SETTLE:  Yes Sir

KEEFER:   You have the right to talk to a lawyer and have him or her present with you while you are being questioned if you are under arrest and you cannot afford a lawyer one will one will be appointed to represent you before any questioning if you wish you can decide at any time to exercise these rights and not answer any questions or make any statements, do you understand those rights?

SETTLE:  Yes

1

## STATEMENT OF JOSHUA MICHAEL SETTLE – TAKEN BY SERGEANT B. L. KEEFER:

KEEFER:   Okay, would you like to tell me your side of story tonight Josh, just tell me what happened from your perspective?

SETTLE:   I got suspended license

KEEFER:   You got .. so your license is suspended?

SETTLE:   Be my third time

KEEFER:   Okay, so you were scared?

SETTLE:   Yes man …. That's  why I got my first ticket cause I was scared man

KEEFER:   Who wrote you your first time was it a trooper was it a deputy?

SETTLE:   It was in Spencer

KEEFER:   City Police in Spencer got you the first time?

SETTLE:   I shot up a dirt road like up there and set in a driveway and they came up there and

KEEFER:   So you've run before from the police?

SETTLE:   Yeah and I told them I was scared like….. Inaudible

KEEFER:   Yeah

SETTLE:   Well anyways I came to an intersection.  I wasn't doing nothing, anything wrong.

KEEFER:   Was this tonight what you are talking about or was this the first time?

SETTLE:   Yeah no this was tonight

KEEFER:   Well let's go back to the first time did you run from Spencer PD the first time you got stopped?

SETTLE:   Yeah but they was never behind me like they passed me and I just shot up the road and set

KEEFER:   But you were trying to get away from them?

SETTLE:   I…

KEEFER:   Cause you're probably scared?

2

## STATEMENT OF JOSHUA MICHAEL SETTLE – TAKEN BY SERGEANT B. L. KEEFER:

SETTLE:  Yeah I am man

KEEFER:  Okay, well the second time who got you driving suspended the second time?

SETTLE:  Trooper McDonald

KEEFER:  Okay, did you run from him?

SETTLE:  No Sir

KEEFER:  So you took your medicine and you stopped?

SETTLE:  Yes

KEEFER:  Okay

SETTLE:  Well I was at the gas station actually

KEEFER:  Okay so they pulled in there and got you, okay.  So agree you really didn't have an opportunity to run that time?

SETTLE:  No, I didn't

KEEFER:  Now so your, your driver's license has been suspended and you have two prior offenses for driving suspended.  What's what's your, what's your license suspended for?

SETTLE:  Not paying my speeding tickets

KEEFER:  Not paying your tickets you don't have DUI tickets for nothing like that right?

SETTLE:  No sir

KEEFER:  Okay, uh now tonight uh you were driving by yourself?

SETTLE:  Yes Sir

KEEFER:  What kind of vehicle were you in?

SETTLE:  Its 98 Chevy Cavalier

KEEFER:  Okay

SETTLE:  Two- door

KEEFER:  Okay, were you drinking or anything tonight?

3

## STATEMENT OF JOSHUA MICHAEL SETTLE – TAKEN BY SERGEANT B. L. KEEFER:

SETTLE:   No

KEEFER:   Were you taking any kind of medication?

SETTLE:   No

KEEFER:   Nothing at all?

SETTLE:   Huh uh

KEEFER:   So you are sober as a judge right now?

SETTLE:   Yes Sir

KEEFER:   So if I draw your blood right now you will come back as clean, maybe not?

SETTLE:   Maybe marijuana

KEEFER:   Maybe marijuana, what else a little bit of crank maybe? Just be honest with me cause these people are trying to save your life too so they might need to know what you are on. I'm not going to arrest you for possession of meth right now.  If you did a little bit of crank we just need to know.

SETTLE:   I don't never remember doing that

KEEFER:   You don't remember doing any meth just marijuana?

SETTLE:   No Sir, just smoked weed

KEEFER:   You just smoked weed okay

SETTLE:   …. Inaudible

KEEFER:   Well that will be legal before too long, so right?

SETTLE:   Yes Sir

KEEFER:   Okay, so you're driving along, where were you driving what kind of car were you in again?

SETTLE:   It's either a 98, 97

KEEFER:   97?

SETTLE:   It's in the 90's to 2000, Chevy Cavalier

KEEFER:   Chevy Cavalier, what color it that car Josh?

4

## STATEMENT OF JOSHUA MICHAEL SETTLE – TAKEN BY SERGEANT B. L. KEEFER:

SETTLE:  Green and like gray....

KEEFER:   Okay, So an older molder Chevy Cavalier right?

SETTLE:  Yes it's kinda older, loud

KEEFER:   Loud?

SETTLE:  Yes

KEEFER:   Okay, so the trooper gets behind you tries to pull you over?

SETTLE:  Well I seen him flip his lights on before he even got behind me

KEEFER:   And you were scared?

SETTLE:  I don't know.. scared

KEEFER:   So you too took off?

SETTLE:  Yeah

KEEFER:   Then what happened?

SETTLE:  Car like didn't.. car...

KEEFER:   You outdrove your car, is that what you are trying to tell me, did you, did you wreck your car?

SETTLE:  Yeah

KEEFER:   You didn't hit anybody though right when you were trying to run from the police?

SETTLE:  No Sir

KEEFER:   Okay, didn't hit any kids, didn't hit any deer nothing like that?

SETTLE:  No I turned down Daniels Run real fast

KEEFER:   Daniels Run, it that off Route 16 or is that off Route 33?

SETTLE:  Route 16 going towards Grantsville you get to the top of Mt. Zion hill, come around that turn and it will be down over to the left

KEEFER:   Okay, so you took off up Daniels, cause you'd been on 16 when the trooper got behind you and took off up Daniels Run?

5

## STATEMENT OF JOSHUA MICHAEL SETTLE – TAKEN BY SERGEANT B. L. KEEFER:

SETTLE:   Yes I shot down Daniels Run

KEEFER:   Then what happened?

SETTLE:   I started speeding up and...... one of them turns down there I ended up broad siding fish tailing into the ditch and hit like a fence post and rolled

KEEFER:   Okay

SETTLE:   And then..

KEEFER:   Did you have your seatbelt on?

SETTLE:   Yes Sir

KEEFER:   Did your, airbags come out?

SETTLE:   No Sir

KEEFER:   They didn't

SETTLE:   No

KEEFER:   Of course those 90's models might not even have air bags mighten it?

SETTLE:   Uh

KEEFER:   Don't know?

SETTLE:   Yes I think it does

KEEFER:   Seatbelt kept you from getting throw out then right?

SETTLE:   Yep

KEEFER:   So the cars on its top is that am I or was it on its side at that point?

SETTLE:   On its top

KEEFER:   On its top, so you unbuckled your seatbelt?

SETTLE:   Yes

KEEFER:   And you got out?

SETTLE:   No

6

## STATEMENT OF JOSHUA MICHAEL SETTLE – TAKEN BY SERGEANT B. L. KEEFER:

KEEFER:   Okay, what happened?

SETTLE:   I was telling him I was scared and he was telling me to get out show me your hands.  I was telling him I was scared here they are.  I started crawling out of there and I told him I can't and then he got ahold of me like by my arms and dragged me out of there

KEEFER:   Okay, did that make you mad?

SETTLE:   No

KEEFER:   Just scared?

SETTLE:   I was already scared I didn't do nothing

KEEFER:   Okay, didn't do nothing but run tonight right?

SETTLE:   But then he was so hateful man he throwed  me down on the ground shoved my face in the dirt

KEEFER:   Okay

SETTLE:   Hold still, hold still, choking me

KEEFER:   Okay

SETTLE:   Cutting my airway off....I was I told him I was.  I wasn't moving.  He said quit moving, quit moving, quit moving.  I wasn't moving.

KEEFER:   Okay

SETTLE:   I told him this wasn't right you know.  I told him you know I don't have nothing on me.  He wouldn't let me up.  He kept choking me.  So I get up you know I

KEEFER:   You got up on your own?

SETTLE:   No, I had to fight him kinda

KEEFER:   You fought with him?

SETTLE:   I didn't I didn't put I didn't throw any .....

KEEFER:   But you you

SETTLE:   I was trying...

## STATEMENT OF JOSHUA MICHAEL SETTLE – TAKEN BY SERGEANT B. L. KEEFER:

KEEFER:   You tried to get away from him, is that fair to say?

SETTLE:   Yes

KEEFER:   Okay, just tell me what happened buddy be honest with me it's all gonna come out?

SETTLE:   He was like I don't know

KEEFER:   Well why did you get up for cause you just wanted try to get away from him?

SETTLE:   No, he won't, he wouldn't stop choking me

KEEFER:   Okay

SETTLE:   Tight real tight and he..

KEEFER:   So you felt the need to fight back against that Trooper?

SETTLE:   Like he was real hateful for nothing

KEEFER:   Okay

SETTLE:   I know he's probably pissed I ran

KEEFER:   Okay

SETTLE:   But

KEEFER:   But what?

SETTLE:   He wouldn't stop choking me and he had his face on my, in the rocks and then whenever I got up

KEEFER:   So you got mad?

SETTLE:   Um huh yeah I was kind of getting a little,  I was so scared you know I was crying,  I told him to get you know let me up, arrest me, let me get in your car, whatever and he wouldn't and

KEEFER:   So when I watch the video I'm gonna see, I'm gonna hear you say that in those exact words?

SETTLE:   Well probably not, you'll, you'll hear me say yeah I want in your car, just put me in your car and pepper sprayed me

## STATEMENT OF JOSHUA MICHAEL SETTLE – TAKEN BY SERGEANT B. L. KEEFER:

KEEFER:  Uh-huh

SETTLE:  I was leaning up against my car and whenever I don't know the pepper spray didn't work, he got his night stick

KEEFER:   Why didn't the pepper spray work on you? Just because you was still going back at him, is that what happened? You still had some fight in you?

SETTLE:  Huh-uh no he kept telling me "hold still, hold still"

KEEFER:   Okay

SETTLE:  I, I was but it wouldn't work, it didn't work, he kept doing it man

KEEFER:   Okay and it made you mad?

SETTLE:  No, no it didn't make you mad.  Ugh I was scared man and he, man

KEEFER:   Well tell me. Tell me your side of it. That's what I'm here for today buddy.  So at this point you are up and you're, you're grappling with the Trooper, am I right? I mean you were trying

SETTLE:  Uh-uh

KEEFER:   You weren't?

SETTLE:  No, I was trying to get him off of me

KEEFER:   You were trying to get him off of you?

SETTLE:  He already had me down, I told him I didn't have nothing on me, everything out of pockets

KEEFER:   Okay

SETTLE:  He...

KEEFER:   So then what happened after he pepper sprayed you?

SETTLE:  He tried to get me back down on the ground, lay flat on the ground, I did and he just kept

KEEFER:   So you were compliant this whole time?

SETTLE:  Yeah

KEEFER:   Other than when you got up and you were fighting against him?

SETTLE:  You see you probably see the dirt on my face

9

## STATEMENT OF JOSHUA MICHAEL SETTLE – TAKEN BY SERGEANT B. L. KEEFER:

KEEFER:  Oh sure but you were in a wreck also tonight too, right?

SETTLE:  Yeah but I didn't hit my head off the windshield like he was saying.

KEEFER:  Oh I know he hit you.

SETTLE:  Ah man he tore my head up with the night stick, my arm here.

KEEFER:  Uh-huh, are you feeling more pain now than you were earlier or was you feeling more pain earlier than you are now?

SETTLE:  Probably both

KEEFER:  Because I'm noticing your eyes, Josh, I'm gonna be honest with you I've been doing this a long time. You're eyes are- buddy they are twitching all over the place. Is there any chance other than marijuana, just be honest with me, that you might have done some crank?

SETTLE:  No man.

KEEFER:  You said you couldn't remember but is there a chance you might have some methamphetamine in your system?

SETTLE:  I don't think

KEEFER:  Because your eyes are telling me a different story.

SETTLE:  I don't think Sir

KEEFER:  You don't think so?

SETTLE:  I don't know Sir

KEEFER:  When's the last time you did some crank or meth?

SETTLE:  I don't, man I was at a buddy's house smoked a bowl

KEEFER:  Okay

SETTLE:  And then...

KEEFER:  Who were you, whose house were you at earlier?

SETTLE:  It wasn't today.

10

## STATEMENT OF JOSHUA MICHAEL SETTLE – TAKEN BY SERGEANT B. L. KEEFER:

KEEFER:  Oh you smoked a bowl earlier with your buddy days ago?

SETTLE:  Not days ago.

KEEFER:  Okay when?

SETTLE:  Probably a day or two ago.

KEEFER:  A day or two, so you're just smoking by yourself tonight?

SETTLE:  I did, I don't have anything man

KEEFER:  Well you had marijuana on you.

SETTLE:  Yeah I had a bowl they probably found it

KEEFER:  Yeah

SETTLE:  I mean I did smoke a little bit before I left marijuana.

KEEFER:  Okay

SETTLE:  Man he just wouldn't, he, he just

KEEFER:  He wouldn't what, leave you alone and let you go on your way?

SETTLE:  No that's not what I was, like I was compliant. Holding still and holding still and he wouldn't do it man

KEEFER:  Okay so

SETTLE:  It wasn't good enough

KEEFER:  Okay

SETTLE:  And I told him get off and you'll see it on the video officer

KEEFER:  Sure will

SETTLE:  Is it on the video?

KEEFER:  I haven't watched it yet Buddy, I came straight to you

SETTLE:  Is it on the car though?

## STATEMENT OF JOSHUA MICHAEL SETTLE – TAKEN BY SERGEANT B. L. KEEFER:

KEEFER:  Do what now?

SETTLE:  Is it on the..?

KEEFER:  I don't know. That's why I'm asking. I'm asking you so I can get, so I can compare what you said to to what happened if there is one, okay?

SETTLE:  He wouldn't even, like he didn't even ask for back up or no, I wasn't even fighting. He didn't get on the radio or nothing he just kept, and whenever we moved away from my car into the road and he started beating me down with the night stick hitting me in the head and then I swung with the cuff

KEEFER:  So he had one cuff on you and you were struggling against it?

SETTLE:  Yeah I think he broke my wrist how tight he had that thing.

KEEFER:  Okay

SETTLE:  And he wouldn't loosen it either

KEEFER:  So you swung the cuff around?

SETTLE:  No, like I tried to I mean I don't know let him let go of me to quit he kept hitting me with his night stick

KEEFER:  And that's when you had one cuff on is when he hit you with his night stick with the, with the baton?

SETTLE:  Yes Sir

KEEFER:  Okay so you had one cuff on you and he had to hit you with the baton is that what I'm to understand?

SETTLE:  The night stick

KEEFER:  Yeah it's a baton.

SETTLE:  Is that what it's called?

KEEFER:  Yeah yeah a baton.

SETTLE:  Yeah

KEEFER:  Is it one like this right here? See on the back of my pistol, like that?

SETTLE:  And yeah and I was laying there on the grass

12

## STATEMENT OF JOSHUA MICHAEL SETTLE – TAKEN BY SERGEANT B. L. KEEFER:

KEEFER:  How many times did he hit you with the baton?

SETTLE:  Probably at least six.

KEEFER:  At least six times?

SETTLE:  Seven, eight times.

KEEFER:  Seven, eight times?

SETTLE:  Head, my arm, the back of my leg

KEEFER:  And at that point is when he was able to get the cuff on you, the other cuff on you?

SETTLE:  No, he never did

KEEFER:  He never did be able to get the cuff on you?

SETTLE:  No like he never did put it on me

KEEFER:  How come he never put the other cuff on you?

SETTLE:  He did when I laid down on the ground and told him.  He said we're done fighting after he seen all blood

KEEFER:  Okay

SETTLE:  My buddy Tristen Satterfield pulled up and he told him to call 911

KEEFER:  Okay

SETTLE:  He wouldn't give me a drink of water….man

KEEFER:  So you, you admit you ran tonight?

SETTLE:  Um huh

KEEFER:  You admit you ran from the police tonight?

SETTLE:  Yes Sir

KEEFER:  Because you had a suspended driver's license?

SETTLE:  Yes Sir, I was scared

13

## STATEMENT OF JOSHUA MICHAEL SETTLE – TAKEN BY SERGEANT B. L. KEEFER:

KEEFER:   And this will be the third offense for you right? And then you wreck your car while you're trying to run from the police right?

SETTLE: Yes Sir

KEEFER:   He gets you out, at some point you say you are complaint; however you tell me at one point you were able to get up .......

**** Both subjects speaking at the same time – inaudible***

KEEFER:   He still wasn't able to get a cuff on you though right, did he get one cuff on you while you were on the ground?

SETTLE: Yes

KEEFER:   Okay, and then for some reason he, he didn't put the other cuff on you at that point?

SETTLE: Huh uh

KEEFER:   How come, did you tense up?

SETTLE: Huh?

KEEFER:   Did you tense up at that point, when he got the one cuff on you?

SETTLE: Yeah, … that's kind of like cause he wouldn't stop beating me up man…

KEEFER:   Okay, so he got one cuff on you and wasn't able to get the other cuff on you?

SETTLE: Yes he did

KEEFER:   Cause you kinda bucked?

SETTLE: I just let him

KEEFER:   Well you didn't let him put the cuff.....

SETTLE: When I when I was laying on the ground at the…. I mean it's…after he got done beating me in the head and leg he tossed me down on the ground laying in the grass, blood is still there probably all over the road

KEEFER:   Sure

SETTLE: And that's when I let him put the other cuff on there and I told him I'm done fighting you know

14

## STATEMENT OF JOSHUA MICHAEL SETTLE – TAKEN BY SERGEANT B. L. KEEFER:

KEEFER:  You told him you were done fighting?

……. Yeah

KEEFER:  Okay

SETTLE: Don't hit me no more

KEEFER:  Okay

SETTLE: Please., I was begging him

KEEFER:  Okay

SETTLE: Just put me in your car do whatever and he wouldn't

KEEFER:  Okay, so you accept any of the blame in this stuff tonight?

SETTLE: Huh

KEEFER:  You think you're in the right tonight?

SETTLE: No

KEEFER:  Okay

SETTLE: I did run

KEEFER:  Anything you want to tell me tonight?

SETTLE: …..Inaudible

KEEFER:  I'll take some pictures of you here real quick and I'm sure they want to take you some place here real quick.  Is there anything else you would like to add to your statement tonight?

SETTLE: …no

KEEFER:  I couldn't hear that part of it?

SETTLE:  He just, I don't know man

KEEFER:  You don't know?

SETTLE: Just seen fear

## STATEMENT OF JOSHUA MICHAEL SETTLE – TAKEN BY SERGEANT B. L. KEEFER:

KEEFER:  You just saw fear?

SETTLE:  A lot of it in him, he showed a lot of anger

KEEFER:  Okay

SETTLE:  Towards me and I was trying to show him that I wasn't gonna do nothing

KEEFER:  Were you respectful?

SETTLE:  Yes

KEEFER:  And compliant the whole time?

SETTLE:  Yes Sir

KEEFER:  You were?

SETTLE:  Whenever I was in and out of the car, well actually the whole, the whole time Sir.

KEEFER:  You were compliant the whole time?

SETTLE:  Yeah, other than trying to tell him to stop

KEEFER:  Okay, anything else you want to tell me tonight?

SETTLE:  No, other than I didn't I couldn't .. it didn't matter what I said

KEEFER:  Okay

SETTLE:  Inaudible.......the cops down ...trying to say uh hit my head off windshield, I didn't hit my head off the windshield

KEEFER:  Okay, I know you were in a fight with a Trooper tonight.

SETTLE:  Yeah but I didn't.. .my hands on him I mean..

KEEFER:  Other than swing your cuffs around, right?

SETTLE:  No, what I mean by that is he had ahold of the other cuff and I was trying to get him off of me and like he had this one on me and I was ... swung ...... Inaudible

KEEFER:  But you were complaint?

SETTLE:  Yes

16

## STATEMENT OF JOSHUA MICHAEL SETTLE – TAKEN BY SERGEANT B. L. KEEFER:

KEEFER:   We will go ahead and conclude anything else you want to add?

SETTLE: ....Inaudible

KEEFER:   Do you feel like you are sober at this point?

SETTLE: I been sober actually

KEEFER:   Been sober, okay.

SETTLE: Yeah

KEEFER:  We'll go ahead and conclude this interview the time is now 0132 hours.

## INTERVIEW END

17

Grantsville Detachment
Incident Report

Incident date:              04/19/17

To Units:

Invest, Detachment:         Spencer Detachment

Invest. Unit:               Stepp, N.S.

Assisted by:                Potillo, J.T., Ellis, J.M. Keefer, B.L., Starsick, O.S.

Victim:                     Stepp, N.S. and SOWV

Suspect:                    Joshua Settle
                            D.O.B. ████████
                            SS# █████████
                            749 Sams Run Road
                            Looneyville, WV

Where occurred:             SR 16 and Daniels Run Road

County:                     Calhoun

Narrative:                  On today's date, at approximately 2230 hours, Sr. Tpr. N.S.
                            Stepp attempted to affect a traffic stop of the suspect on SR
                            16.  The vehicle began to flee and approximately one
                            minute later, the suspect vehicle crashed.  The suspect
                            exited the vehicle and he began to assault Tpr. Stepp, who
                            utilized open hand techniques before deploying his OC
                            Spray, which had no effect. The suspect attempted to gain
                            control of Tpr. Stepp's side arm and nearly had it
                            unholstered, when Tpr. Stepp deployed his ASP baton. The
                            suspect was restrained  but injured in the process.  The
                            suspect was transported to CAMC General.

NOT FOR MEDIA RELEASE

Authorization:              Sgt. B.L. Keefer

RECEIVED 04/20/2017 02:18   304-746-2408        PROFESSIONAL STANDAR
04/20/2017  02:06   304-927-0972   SPENCER DETACHMENT   PAGE 01/02

176crty

WVSP Form #175, Revised 09/15
E REV/09/16

# REPORT OF RESPONSE TO
# RESISTANCE OR AGGRESSION

Professional Standards #

**PROFESSIONAL**
**APR 20 2017**
**STANDARDS**

Dist Comm _____
Troop Comm _____
Chief of Field _____
Inspector _____

## GENERAL INFORMATION:

| SUPERVISOR: | DETACHMENT: | DATE OF INCIDENT: | TIME OF INCIDENT: |
|---|---|---|---|
| Keefer, B.L. | Clay/Calhoun | 04/19/2017 | 2230 |

| LOCATION OF INCIDENT: |
|---|
| State Route 16 and Daniels Run Road Calhoun County |

## SUBJECT INFORMATION:

| SUBJECT NAME (LAST, FIRST): | RACE/SEX: | DOB: | SSN: |
|---|---|---|---|
| Settle, Joshua M. | W/M | 80s | |

| INJURY: | TREATMENT: | SUBJECT RESISTANCE LEVEL: | WEAPON USED: | HOW USED: |
|---|---|---|---|---|
| 13 | 23, 24 | 52, 53, 55 | 71, 72 | 110, 111, 112, 113 |

| SUBJECT CONTACTED BY SUPERVISOR: IF YES, DATE AND TIME: | STATEMENT TAKEN FROM SUBJECT: IF YES, DATE AND TIME: | SUBJECT PHOTOGRAPHED? |
|---|---|---|
| Yes 04/20/17 0115 | Yes 04/20/17 0115 | Yes |

## OFFICER(S) INVOLVED:

| NAME (LAST, FIRST): | RANK: | OFFICER PHOTOGRAPHED: |
|---|---|---|
| Stepp, N.S. | Sr. Tpr. | Yes |

| INJURY: | TREATMENT: | LEVEL OF RESPONSE: | TYPE OF RESPONSE: | HOW USED: |
|---|---|---|---|---|
| 11, 12 | 22 | 60, 61, 63, 64, 65 | 91, 92, 96, 100 | 111, 112, 113, 118 |

| NAME (LAST, FIRST): | RANK: | OFFICER PHOTOGRAPHED: |
|---|---|---|
| | | |

| INJURY: | TREATMENT: | LEVEL OF RESPONSE: | TYPE OF RESPONSE: | HOW USED: |
|---|---|---|---|---|
| | | | | |

| NAME (LAST, FIRST): | RANK: | OFFICER PHOTOGRAPHED: |
|---|---|---|
| | | |

| INJURY: | TREATMENT: | LEVEL OF RESPONSE: | TYPE OF RESPONSE: | HOW USED: |
|---|---|---|---|---|
| | | | | |

## WITNESS(ES):

| NAME (LAST, FIRST): | ADDRESS: | PHONE: |
|---|---|---|
| None | | |
| NAME (LAST, FIRST): | ADDRESS: | PHONE: |
| | | |
| NAME (LAST, FIRST): | ADDRESS: | PHONE: |
| | | |

## TRANSPORTING INFORMATION:

| TRANSPORTING OFFICER (LAST, FIRST): | FROM: | TO: |
|---|---|---|
| None suspect transported by ambulance | | |
| TRANSPORTING OFFICER (LAST, FIRST): | FROM: | TO: |
| | | |
| TRANSPORTING OFFICER (LAST, FIRST): | FROM: | TO: |
| | | |
| TRANSPORTING OFFICER (LAST, FIRST): | FROM: | TO: |
| | | |

| INJURY | TREATMENT | SUBJECT COMPLIANCE LEVEL | OFFICER'S LEVEL OF RESPONSE | SUBJECT WEAPON USED | OFFICER'S TYPE OF RESPONSE | HOW USED |
|---|---|---|---|---|---|---|
| 10 - Injury not related to response | 20 - None | 50 - No Resistance | 60 - Physical Presence | 70 - None | 90 - None | 110 - Threatened |
| 11 - No Injury | 21 - Refusal | 51 - Passive Resistance | 61 - Use of Verbal Commands | 71 - Hands/Arms | 91 - Hands/Arms | 111 - Controlled |
| 12 - Sprains/strains/abrasion | 22 - First Aid | 52 - Attempted to Disengage | 63 - Use of Chemical Weapon | 72 - Fist | 92 - Fist | 112 - Push/Pull |
| 12 - Sprains/Scrapes | 23 - Paramedic/EMT | 53 - Actively resisted | 73 - Pressure | 93 - Feet/Legs | 113 - Strike/Hit |
| 13 - Laceration | 24 - Hospital | 54 - Actively resisted and incited bystanders | Before Empty Hand Tactics | 74 - Teeth | 94 - Knife | 114 - Bite |
| 14 - Bite | 25 - Personal Physician | 55 - Assaulted Officers | 64 - Empty Hand Tactics | 75 - Blunt Inst. | 95 - Flashlight | 115 - Throw |
| 15 - Puncture | | | 81 - Use of Chemical Weapon After Empty Hand Tactics | 76 - Cutting Inst. | 96 - Baton | 116 - Slash |
| 16 - Broken Bone | | | 65 - Use of Police Baton | 77 - Rock/Brick | 97 - K-9 | 117 - Push |
| 17 - Internal Injury | | | 66 - Use of Lethal Force | 78 - Handgun | 98 - Aluminum | 118 - Hand/weapon |
| 18 - Gunshot | | | | 79 - Rifle | 99 - Shotgun | 119 - Other |
| 19 - Other | | | | 80 - Shotgun | 100 - Chemical Agent | |
| | | | | 81 - Vehicle | 101 - Vehicle | |
| | | | | 82 - Other | 102 - Other | |
| | | | | | 103 - Rifle | |

FAXED TO PROFESSIONAL STANDARDS 746-2408 BY  Sgt. B.L. Keefer   DATE/TIME 4/20/17 0207        PAGES  2

04/20/2017  02:06   RECEIVED  04/20/2017 02:18   304-746-2408   PROFESSIONAL STANDAR
                    304-927-0972              SPENCER DETACHMENT   PAGE  02/02

176019

### Grantsville Detachment
### Incident Report

PROFESSIONAL
APR 20 2017
STANDARDS

| | |
|---|---|
| Incident date: | 04/19/17 |
| To Units: | |
| Invest, Detachment: | Spencer Detachment |
| Invest. Unit: | Stepp, N.S. |
| Assisted by: | Potillo, J.T., Ellis, J.M. Keefer, B.L., Starsick, O.S. |
| Victim: | Stepp, N.S. and SOWV |
| Suspect: | Joshua Settle
D.O.B.
SS# ?
749 Sams Run Road
Looneyville, WV |
| Where occurred: | SR 16 and Daniels Run Road |
| County: | Calhoun |
| Narrative: | On today's date, at approximately 2230 hours, Sr. Tpr. N.S. Stepp attempted to affect a traffic stop of the suspect on SR 16. The vehicle began to flee and approximately one minute later, the suspect vehicle crashed. The suspect exited the vehicle and he began to assault Tpr. Stepp, who utilized open hand techniques before deploying his OC Spray, which had no effect. The suspect attempted to gain control of Tpr. Stepp's side arm and nearly had it unholstered, when Tpr. Stepp deployed his ASP baton. The suspect was restrained but injured in the process. The suspect was transported to CAMC General. |

### NOT FOR MEDIA RELEASE

| | |
|---|---|
| Authorization: | Sgt. B.L. Keefer |

# EXHIBIT 2

WVSP FORM 17-A
REV 11/2016



## STATE OF WEST VIRGINIA
# WEST VIRGINIA STATE POLICE
### REPORT OF CRIMINAL INVESTIGATION

*JCD Copied*   *C/our*

| DATE OF REPORT | RESTRICTION | REPORT TYPE | DETACHMENT FILE NUMBER | | DETACHMENT |
|---|---|---|---|---|---|
| May 31, 2017 | ☐ RESTRICTED  ☒ NOT RESTRICTED | ☒ INITIAL  ☐ SUPPLEMENTAL | 431012685 | | WVSP Clay |

| FOLLOW UP NEEDED | ☐ YES  ☒ NO | MEMBER ASSIGNED | MEMBER ID # |
|---|---|---|---|
| | | S/Trooper N.S. Stepp | 699 |

| DAY | DATE REPORTED ON | TIME | CASE DISPOSITION | | |
|---|---|---|---|---|---|
| Wednesday | April 19, 2017 | 2231 | ☐ 1-EXCEPTION  ☒ 2-ARRESTED  ☐ 3-UNFOUNDED | ☐ 4-ACTIVE  ☐ 5-IN-ACTIVE  ☐ 6-CITATION | ☐ 7-WARRANT ISSUED  ☐ 8-NOT A CRIME/ OTHER SERVICE  ☐ 9-DIRECT GRAND JURY INDICTMENT |

| | OCCURRED FROM | | OFFENSE | ENTRY | SUSPECT USING |
|---|---|---|---|---|---|
| Wednesday | April 19, 2017 | 2230 | ☐ A-ATTEMPTED  ☒ C-COMPLETED  ☐ NOT-APPLICABLE | ☐ F-FORCIBLE  ☐ N-NON-FORCIBLE  ☐ NOT-APPLICABLE | ☐ C-COMPUTER USED  ☐ A-ALCOHOL USED  ☒ D-DRUG RELATED  ☐ NOT-APPLICABLE |
| | OCCURRED TO | | | | |
| Wednesday | April 19, 2017 | 2246 | | | |

| OFFENSE # | PRIMARY AND LESSER INCLUDED OFFENSE(S) | STATUTE | CLEARED EXCEPTIONALLY |
|---|---|---|---|
| 1 | Defective Equipment | 17C-15-1(a) | ☐ A-DEATH OF OFFENDER |
| 2 | Fleeing in Motor Vehicle | 61-5-17(e) | ☐ B-PROSECUTION DECLINED  ☐ C-EXTRADITION DENIED |
| 3 | Obstructing an Officer | 61-5-17(a) | ☐ D-VICTIM REFUSED TO COOPERATE |
| 4 | Attempting to Disarm Police Officer | 61-5-17(b) | ☐ E-JUVENILE-NO CUSTODY  ☐ NOT-APPLICABLE |
| 5 | Battery Police Officer | 61-2-10(b)(d) | |
| 6 | Driving Suspended III | 17C-4-3(a)(d) | DATE CLEARED |
| 7 | Possession of Marijuana less than 15 grams | 60A-4-401(c) | |
| 8 | Destruction of Property | 61-3-30(a) | |

| LOCATION (SELECT ONE) | | | |
|---|---|---|---|
| ☐ 01-AIR/BUS/TRAIN TERMINAL | ☐ 10-FIELD/ WOODS | ☐ 19-RENTAL/ STORAGE FACILITY | |
| ☐ 02-BANK/SAVINGS & LOAN | ☐ 11-GOVERNMENT/ PUBLIC BUILDING | ☐ 20-RESIDENCE/ HOME | |
| ☐ 03-BAR/ NIGHT CLUB | ☐ 12-GROCERY/ SUPERMARKET | ☐ 21-RESTAURANT | |
| ☐ 04-CHURCH/SYNAGOGUE/TEMPLE/MOSQUE | ☒ 13-HIGHWAY/ ROAD/ ALLEY | ☐ 22-SCHOOL (OTHER THAN COLLEGE) | |
| ☐ 05-COMMERCIAL/ OFFICE BUILDING | ☐ 14-HOTEL/ MOTEL/ ETC. | ☐ 23-SERVICE/GAS STATION | |
| ☐ 06-CONSTRUCTION SITE | ☐ 15-JAIL/ PRISON/ PENITENTIARY | ☐ 24-SPECIALTY STORE | |
| ☐ 07-CONVENIENCE STORE | ☐ 16-LAKE/ WATERWAY | ☐ 25-OTHER/UNKNOWN | |
| ☐ 08-DEPARTMENT/ DISCOUNT STORE | ☐ 17-LIQUOR STORE | ☐ 26-COLLEGE/ UNIVERSITY | |
| ☐ 09-DRUG STORE/ DR. OFFICE/ HOSPITAL | ☐ 18-PARKING LOT/ GARAGE | ☐ 40-ATM SEPARATE FROM BANK | |

GPS COORDINATES *IF AVAILABLE*    LAT    LONG

| PLACE OF CRIME (SPECIFIC DESCRIPTION) | Near the intersection of US Rt. 33 and WV Rt. 16 in Millstone, Calhoun County, West Virginia. |
|---|---|

| WEATHER | ☒ 1-CLEAR  ☐ 2-CLOUDY  ☐ 3-RAINING  ☐ 4-FOG/SMOG  ☐ 5-SNOW/SLEET  ☐ 6-HAILING  ☐ 7-UNKNOWN | TEMP° | 70 |
|---|---|---|---|

| LIGHTING | ☐ 1-NATURAL  ☒ 2-MOON  ☐ 3-ARTIFICIAL/EXTERIOR  ☐ 4-ARTIFICIAL/INTERIOR  ☐ 5-UNKNOWN |
|---|---|

REVIEWED BY:

DET CMDR: _____ *(INITIALS)*   bjw  6/14/17

DIST CMDR: _____ *(INITIALS)*

431012685

1

WVSP FORM 17-A
REV 11/2016

# REPORT OF CRIMINAL INVESTIGATION

431012685

| COMPLAINANT | | NAME/ALIAS | | | | STATEMENT OBTAINED | |
|---|---|---|---|---|---|---|---|
| ☐ SAME AS VICTIM | | S/Trooper N.S. Stepp | | | | ☒ NO  ☐ YES, ATTACHED | |
| | | ADDRESS | | CITY | | STATE | ZIP CODE |
| | | 5650 Big Otter Highway | | Ivydale | | WV | 25113 |
| | | PHONE | CELL. | | EMAIL. | STATE ID OR DRIVER'S LICENSE # | |
| | | (304)587-2201 | | | | | |

| VICTIM #   1 | | TYPE OF VICTIM | | | | | |
|---|---|---|---|---|---|---|---|
| | | ☐ A-ADULT | ☐ B-BUSINESS | ☐ F-FINANCIAL INSTITUTION | ☐ L-LAW ENFORCEMENT OFFICER | | ☐ U-UNKNOWN |
| | | ☐ I-JUVENILE | ☐ G-GOVERNMENT | ☐ R-RELIGIOUS ORGANIZATION | ☒ S-SOCIETY/PUBLIC | | ☐ O-OTHER |

| LINKED TO OFFENSE # | NAME/ALIAS | | STATEMENT OBTAINED | |
|---|---|---|---|---|
| ☒1 ☒3 ☐5 ☒7 | State of West Virginia | | ☒ NO  ☐ YES, ATTACHED | |
| ☒2 ☐4 ☒6 ☒8 | | | | |

| RACE | | ADDRESS | | CITY | | STATE | ZIP |
|---|---|---|---|---|---|---|---|
| ☐ W-WHITE | | 5650 Big Otter Highway | | Ivydale | | WV | 25113 |
| ☐ B-BLACK | | | | | | | |
| ☐ I-AMERICAN INDIAN/ ALASKAN NATIVE | | PHONE | CELL | | EMAIL. | STATE ID OR DRIVER'S LICENSE # | |
| ☐ A-ASIAN/ PACIFIC ISLANDER | | (304)587-2201 | | | | | |
| ☐ U-UNKNOWN | | DOB | AGE | SEX | HEIGHT | WEIGHT | HAIR | EYES | SOCIAL SECURITY NUMBER |

| ETHNICITY | INDICATE THE VICTIM'S INJURIES FOR THESE OFFENSES | | VICTIM/SUSPECT RELATIONSHIP – DOMESTIC | |
|---|---|---|---|---|
| ☐ HISPANIC | KIDNAPING | FORCIBLE FONDLING | ☐ SB-SPOUSE | ☐ SD-STEP-SIBLING | ☐ IP-INTIMATE PARTNER (OR EX) |
| ☐ NON-HISPANIC ORIGIN | FORCIBLE RAPE | AGGRAVATED ASSAULT | ☐ XS-EX-SPOUSE | ☐ PA-PARENT | ☐ CP-CHILD OF INTIMATE PARTNER |
| ☐ UNKNOWN | FORCIBLE SODOMY | SIMPLE ASSAULT | ☐ BE-ESTRANGED SPOUSE | ☐ SP-STEP-PARENT | ☐ OF-OTHER FAMILY MEMBER |
| | SEXUAL ASSAULT W/ OBJECT | EXTORTION/BLACKMAIL | ☐ CH-CHILD | ☐ GP-GRANDPARENT | ☐ OK-OTHER HOUSEHOLD MEMBER |
| RESIDENT STATUS | ROBBERY | | ☐ SC-STEPCHILD | ☐ GC-GRANDCHILD | ☐ CS-COHABITATING PARTNER (OR EX) |
| ☐ RESIDENT | ☐ B-APPARENT BROKEN BONES | ☐ O-OTHER MAJOR INJURIES | ☐ SB-SIBLING | ☐ IL-IN-LAW | ☐ HR-HOMOSEXUAL RELATIONSHIP |
| ☐ NON-RESIDENT | ☐ I-POSSIBLE INTERNAL INJURIES | ☐ T-LOSS OF TEETH | | | |
| ☐ UNKNOWN | ☐ L-SEVERE LACERATIONS | ☐ U-UNCONSCIOUS | | | |
| | ☐ M-MINOR INJURIES | ☐ N-NONE | | | |

| ADDITIONAL VICTIM(S) | VICTIM/SUSPECT RELATIONSHIP – NON-DOMESTIC | | | |
|---|---|---|---|---|
| ☐ YES – SEE ATTACHMENT | ☐ AQ-ACQUAINTANCE | ☐ BZ-BABYSITTER | ☐ EE-EMPLOYEE | ☐ RU-RELATIONSHIP UNKNOWN |
| | ☐ FR-FRIEND | ☐ BG-BOYFRIEND/GIRLFRIEND (NOT INTIMATE) | ☐ ER-EMPLOYER | ☐ OK-OTHERWISE KNOWN |
| | ☐ NE-NEIGHBOR | ☐ CF-CHILD OF BOYFRIEND/GIRLFRIEND (NOT INTIMATE) | ☐ ST-STRANGER | ☐ VO-VICTIM IS SUSPECT |

| ☐ SUSPECT ☒ ACCUSED | NUMBER | NAME/ALIAS | | | | STATEMENT OBTAINED | |
|---|---|---|---|---|---|---|---|
| | 1 | Joshua Michael Settle | | | | ☒ NO  ☐ YES, ATTACHED | |
| LINKED TO OFFENSE # | | ADDRESS | | CITY | | STATE | ZIP |
| ☒1 ☒3 ☒5 ☒7 | | 749 Sams Run Road | | Looneyville | | WV | |
| ☒2 ☒4 ☒6 ☒8 | | PHONE | CELL | | EMAIL | STATE ID OR DRIVER'S LICENSE # | |

| RACE | | DOB | AGE | SEX | HEIGHT | WEIGHT | HAIR | EYES | SOCIAL SECURITY NUMBER |
|---|---|---|---|---|---|---|---|---|---|
| ☒ W-WHITE | | | 19 | Male | 6'00" | 175lbs | Brown | Brown | |
| ☐ B-BLACK | | | | | | | | | |
| ☐ I-AMERICAN INDIAN/ ALASKAN NATIVE | | TATTOO | | LOCATION | | SCARS/MARKS | | LOCATION | |
| ☐ A-ASIAN/ PACIFIC ISLANDER | | ☐ YES | | | | ☐ YES | | | |
| ☐ U-UNKNOWN | | | | | | | | | |

| ETHNICITY | | ARRESTED | DATE OF ARREST | TIME OF ARREST | PLACE OF ARREST | | |
|---|---|---|---|---|---|---|---|
| ☐ HISPANIC | | ☒ YES  ☐ NO | 04/20/2017 | 0230 | Charleston, West Virginia | | |
| ☒ NON-HISPANIC ORIGIN | | TYPE OF ARREST | | MULTIPLE CLEARANCE INDICATOR | | CDR NUMBER | |
| ☐ UNKNOWN | | ☒ O-ON VIEW (NO WARRANT) | | ☒ M-MULTIPLE (THIS ARREST IS BEING USED TO CLEAR MORE THAN ONE OFFENSE) | | 196094 | |
| | | ☐ S-SUMMONED/CITED (NO CUSTODY) | | ☐ N-NOT APPLICABLE | | LIVESCAN TRANSACTION # | |
| RESIDENT STATUS | | ☐ T-ARRESTED ON WARRANT | | | | 100000014902 | |
| ☐ RESIDENT | | ARRESTEE WAS ARMED WITH – (CHOOSE UP TO TWO) | | | | AUTOMATIC WEAPON USED | |
| ☒ NON-RESIDENT | | ☒ 01-UNARMED | ☐ 13-RIFLE | ☐ 16-LETHAL CUTTING INSTRUMENT | | IF YES, ENTER "A" TO CODE FROM THE LEFT. | |
| ☐ UNKNOWN | | ☐ 11-FIREARM (TYPE NOT STATED) | ☐ 14-SHOTGUN | ☐ 17-CLUB/BLACKJACK/BRASS KNUCKLES | ☐ YES | | |
| WVIX SUBMISSION | | ☐ 12-HANDGUN | ☐ 15-OTHER FIREARM | | | CODE | |
| ☒ YES  ☐ NO | | | | | | | |
| ADDITIONAL SUSPECTS/ACCUSED | | JUVENILE DISPOSITION | | | | | |
| ☐ YES – SEE ATTACHMENT | | ☐ 1-RELEASED TO PARENTS | | ☐ 2-REFERRED TO JUVENILE COURT/PROBATION/JUVENILE DETENTION (JUVENILE PETITION) | | | |
| | | ☐ 3-REFERRED TO DHHR | | ☐ 4-REFERRED TO OTHER POLICE AGENCY | | ☐ 5-REFERRED TO ADULT COURT | |

II

WVSP FORM 17-A
REV 11/2016

# REPORT OF CRIMINAL INVESTIGATION

431012685

## COMPLETE THIS SECTION FOR DRUG RELATED CRIMES - (CHOOSE UP TO THREE)

| | | | DRUG TYPE | QUANTITY | MEASURE | VALUE |
|---|---|---|---|---|---|---|
| A-CRACK | G-OPIUM | U-UNKNOWN | E | 1 | GR | $25.00 |
| B-COCAINE | H-OTHER NARCOTIC | M-OTHER STIMULANTS | | | | |
| C-HASHISH | I-LSD | N-BARBITURATES | | | | |
| D-HEROIN | J-PCP | O-OTHER DEPRESSANTS | | | | |
| E-MARIJUANA | K-OTHER HALLUCINOGENS | P-OTHER DRUGS | | | | |
| F-MORPHINE | L-METHAMPHETAMINES | X-OVER THREE DRUG TYPES | | | | |

### DRUG MEASUREMENT CODE
DU-DOSAGE UNIT    GL-GALLON    LB-POUND
GM-GRAM    LT-LITER    ME-MILLILITER
OZ-OUNCE    KG-KILOGRAM
NP-NUMBER OF PLANTS    FO-FLUID OUNCE

ENTER THE LETTER INDICATED FOR THE DRUG ABOVE IN THE "DRUG TYPE" SECTION TO THE RIGHT

NOTE – DRUG QUANTITY & MEASURE IS APPROXIMATE PENDING A FORENSIC LAB ANALYSIS & THE ATTACHMENT OF A FORENSIC LAB REPORT.

## ADDITIONAL VICTIM INFORMATION – COMPLETE THIS SECTION FOR THE FOLLOWING OFFENSES

### AGGRAVATED ASSAULT/ MURDER/ NON-NEGLIGENT MANSLAUGHTER

- [ ] 01-ARGUMENT
- [x] 02-ASSAULT ON LEO
- [ ] 03-DRUG DEALING
- [ ] 04-GANGLAND
- [ ] 05-JUVENILE GANG
- [ ] 07-MERCY KILLING
- [ ] 08-OTHER FELONY
- [ ] 09-OTHER CIRCUMSTANCE
- [ ] 10-UNKNOWN CIRCUMSTANCE

### JUSTIFIABLE HOMICIDE

#### CHOOSE ONE
- [ ] 20-CRIMINAL KILLED BY PRIVATE CITIZEN
- [ ] 21-CRIMINAL KILLED BY LEO

#### CHOOSE ONE
- [ ] A-CRIMINAL ATTACKED LEO, THAT LEO KILLED CRIMINAL
- [ ] B-CRIMINAL ATTACKED LEO, OTHER LEO KILLED CRIMINAL
- [ ] C-CRIMINAL ATTACKED CIVILIAN
- [ ] D-CRIMINAL ATTEMPTED FLIGHT FROM CRIME
- [ ] E-CRIMINAL KILLED IN COMMISSION OF CRIME
- [ ] F-CRIMINAL RESISTED ARREST
- [ ] G-UNABLE TO DETERMINE/NOT ENOUGH INFORMATION

### MANSLAUGHTER

- [ ] 30-CHILD PLAYING WITH GUN
- [ ] 31-GUN CLEANING ACCIDENT
- [ ] 32-HUNTING INCIDENT
- [ ] 33-OTHER NEGLIGENT WEAPONS HANDLING
- [ ] 34-OTHER NEGLIGENT KILLING

## CRIMINAL ACTIVITY FOR CRIMES AGAINST THE PERSON – COMPLETE THIS SECTION FOR ANY OF THE FOLLOWING OFFENSES – (CHOOSE UP TO THREE)

COUNTERFEITING/ FORGERY
STOLEN PROPERTY OFFENSES
DRUGS/NARCOTICS VIOLATIONS

DRUG EQUIPMENT VIOLATIONS
GAMBLING EQUIPMENT VIOLATIONS

PORNOGRAPHY/OBSCENE MATERIAL
WEAPONS LAW VIOLATIONS

### GANG AFFILIATION
- [ ] J-JUVENILE GANG
- [ ] G-OTHER GANG
- [ ] N-NON GANG INVOLVED

- [ ] B-BUYING/RECEIVING
- [ ] C-CULTIVATING/MANUFACTURING/ PUBLISHING
- [ ] D-DISTRIBUTING/SELLING
- [ ] E-EXPLOITING CHILDREN
- [ ] O-OPERATING/PROMOTING/ASSISTING
- [ ] P-POSSESSING/CONCEALING
- [ ] T-TRANSPORTING/TRANSMITTING/IMPORTING
- [ ] U-USING/CONSUMING

## TYPE OF WEAPON/ FORCE USED – COMPLETE THIS SECTION FOR ANY OF THE FOLLOWING OFFENSES – (CHOOSE UP TO THREE)

MURDER/ NON-NEGLIGENT MANSLAUGHTER
NEGLIGENT HOMICIDE
KIDNAPPING/ ABDUCTION

FORCIBLE RAPE
FORCIBLE SODOMY
FORCIBLE FONDLING

SEXUAL ABUSE WITH OBJECT
ROBBERY
FELONIOUS/ MALICIOUS WOUNDING

MISDEMEANOR ASSAULT/BATTERY
EXTORTION/ BLACKMAIL
WEAPONS LAW VIOLATIONS

- [ ] 11-FIREARM
- [ ] 12-HANDGUN
- [ ] 13-RIFLE
- [ ] 14-SHOTGUN
- [ ] 15-OTHER FIREARM
- [ ] 20-KNIFE/CUTTING INSTRUMENT
- [ ] 30-BLUNT INSTRUMENT
- [ ] 35-MOTOR VEHICLE
- [ ] 40-PERSONAL WEAPONS
- [ ] 50-POISON
- [ ] 60-EXPLOSIVES
- [ ] 65-FIRE/ INCENDIARY DEVICE
- [ ] 70-DRUGS/NARCOTICS
- [ ] 85-ASPHYXIATION
- [ ] 90-OTHER
- [ ] 95-UNKNOWN
- [x] 99-NONE

### AUTOMATIC WEAPON USED
IF YES, ENTER "A" TO CODE FROM THE LEFT.
- [ ] YES
CODE ____

## COMPLETE THIS SECTION IF HATE CRIME IS SUSPECTED

### RACIAL BIAS
- [ ] 11-ANTI-WHITE
- [ ] 12-ANTI-BLACK
- [ ] 13-ANTI-AMERICAN INDIAN/ALASKAN NATIVE
- [ ] 14-ANTI-ASIAN/PACIFIC ISLANDER
- [ ] 15-ANTI-MULTI-RACIAL GROUP
- [ ] 16-ANTI-HAWAIIAN/OTHER PACIFIC ISLANDER

### RELIGION BIAS
- [ ] 21-ANTI-JEWISH
- [ ] 22-ANTI-CATHOLIC
- [ ] 23-ANTI-PROTESTANT
- [ ] 24-ANTI-ISLAM (MUSLIM)
- [ ] 25-ANTI-OTHER RELIGION
- [ ] 26-ANTI-MULTI-RELIGIOUS GROUP
- [ ] 27-ANTI-ATHEIST/AGNOSTIC

### SEXUAL ORIENTATION BIAS
- [ ] 41-ANTI-MALE HOMOSEXUAL (GAYS)
- [ ] 42-ANTI-FEMALE HOMOSEXUAL (LESBIANS)
- [ ] 43-ANTI-HOMOSEXUAL (GAYS & LESBIANS)
- [ ] 44-ANTI-HETROSEXUAL
- [ ] 45-ANTI-BISEXUAL
- [ ] 61-ANTI-MALE
- [ ] 72-ANTI-TRANSGENDER

### ETHNICITY/NATIONAL ORIGIN BIAS
- [ ] 32-ANTI-HISPANIC
- [ ] 33-ANTI-OTHER ETHNICITY/ NATIONAL ORIGIN
- [x] 88-THIS IS NOT A HATE CRIME

### OTHER
- [ ] 50-GENDER BIAS
- [ ] 60-POLITICAL BIAS
- [ ] 51-ANTI-PHYSICAL DISABILITY
- [ ] 52-ANTI-MENTAL DISABILITY

## COMPLETE THIS SECTION IF LAW ENFORCEMENT OFFICER WAS ASSAULTED OR KILLED

### INCIDENT TYPE
- [ ] 1-OFFICER KILLED FELONIOUSLY
- [ ] 2-OFFICER KILLED/ACCIDENT-NEGLIGENTLY
- [x] 3-OFFICER ASSAULTED-NO INJURY
- [ ] 4-OFFICER ASSAULTED-MINOR INJURY
- [ ] 5-OFFICER ASSAULTED-SERIOUS INJURY

### OFFICER ACTIVITY
- [ ] 01-RESPONDING TO DISTURBANCE
- [ ] 02-D&E IN PROGRESS/PURSUING
- [ ] 03-ROBBERY IN PROGRESS/PURSUING
- [ ] 04-ATTEMPTING OTHER ARREST
- [ ] 05-CIVIL DISORDER/RIOT/ETC.
- [ ] 06-DOMESTIC DISTURBANCE
- [ ] 07-HANDLING/TRANSPORTING PRISONER
- [ ] 08-INVESTIGATING SUSPICIOUS PERSON
- [ ] 09-AMBUSH/NO WARNING
- [ ] 10-ASSAILANT MENTALLY DERANGED
- [x] 11-TRAFFIC/PURSUIT/STOP
- [ ] 12-OTHER

### ASSIGNMENT TYPE
- [x] 1-SOLO UNIT/ALONE
- [ ] 2-SOLO UNIT/ASSISTED
- [ ] 3-TWO OFFICER UNIT
- [ ] 4-DETECTIVE/SPECIAL ASSIGNMENT/ALONE
- [ ] 5-DETECTIVE UNIT ASSISTED
- [ ] 6-OTHER/ALONE
- [ ] 7-OTHER/ASSISTED

III

WVSP FORM 17-A
REV 11/2016

# REPORT OF CRIMINAL INVESTIGATION

431012685

## ATTACHMENT A:
## ADDITIONAL VICTIM(S)

### VICTIM # 2

**TYPE OF VICTIM**

| | | | |
|---|---|---|---|
| ☒ A-ADULT | ☐ B-BUSINESS | ☐ F-FINANCIAL INSTITUTION | ☐ L-LAW ENFORCEMENT OFFICER | ☐ U-UNKNOWN |
| ☐ J-JUVENILE | ☐ G-GOVERNMENT | ☐ R-RELIGIOUS ORGANIZATION | ☐ S-SOCIETY/PUBLIC | ☐ O-OTHER |

**LINKED TO OFFENSE #**

☐ 1 ☐ 3 ☒ 5 ☐ 7
☐ 2 ☒ 4 ☐ 6 ☐ 8

**NAME/ALIAS**

S/Trooper N.S. Stepp

**STATEMENT OBTAINED**

☒ NO ☐ YES, ATTACHED

**RACE**

☒ W-WHITE
☐ B-BLACK
☐ I-AMERICAN INDIAN/ ALASKAN NATIVE
☐ A-ASIAN/ PACIFIC ISLANDER
☐ U-UNKNOWN

| ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|
| 5650 Big Otter Highway | Ivydale | WV | 25113 |

| PHONE | CELL | EMAIL | STATE ID OR DRIVER'S LICENSE # |
|---|---|---|---|
| (304)587-2201 | | | |

| DOB | AGE | SEX | HEIGHT | WEIGHT | HAIR | EYES | SOCIAL SECURITY NUMBER |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

**ETHNICITY**

☐ HISPANIC
☒ NON-HISPANIC ORIGIN
☐ UNKNOWN

**RESIDENT STATUS**

☐ RESIDENT
☒ NON-RESIDENT
☐ UNKNOWN

**INDICATE THE VICTIM'S INJURIES FOR THESE OFFENSES**

KIDNAPING
FORCIBLE RAPE
FORCIBLE SODOMY
SEXUAL ASSAULT W/ OBJECT
ROBBERY

FORCIBLE FONDLING
AGGRAVATED ASSAULT
SIMPLE ASSAULT
EXTORTION/BLACKMAIL

☐ B-APPARENT BROKEN BONES
☐ I-POSSIBLE INTERNAL INJURIES
☐ L-SEVERE LACERATIONS
☐ M-MINOR INJURIES

☐ O-OTHER MAJOR INJURIES
☐ T-LOSS OF TEETH
☐ U-UNCONSCIOUS
☒ N-NONE

**VICTIM/ SUSPECT RELATIONSHIP – DOMESTIC**

| | | |
|---|---|---|
| ☐ SS-SPOUSE | ☐ SB-STEP-SIBLING | ☐ IP-INTIMATE PARTNER (OR EX) |
| ☐ XS-EX-SPOUSE | ☐ PA-PARENT | ☐ CF-CHILD OF INTIMATE PARTNER |
| ☐ ES-ESTRANGED SPOUSE | ☐ SP-STEP-PARENT | ☐ OF-OTHER FAMILY MEMBER |
| ☐ CH-CHILD | ☐ GP-GRANDPARENT | ☐ OH-OTHER HOUSEHOLD MEMBER |
| ☐ SC-STEP-CHILD | ☐ GC-GRANDCHILD | ☐ CS-COHABITATING PARTNER (OR EX) |
| ☐ SB-SIBLING | ☐ IL-IN-LAW | ☐ HR-HOMOSEXUAL RELATIONSHIP |

**VICTIM/ SUSPECT RELATIONSHIP – NON-DOMESTIC**

| | | | |
|---|---|---|---|
| ☐ AQ-ACQUAINTANCE | ☐ BB-BABYSITTER | ☐ EE-EMPLOYEE | ☐ RU-RELATIONSHIP UNKNOWN |
| ☐ FR-FRIEND | ☐ BG-BOYFRIEND/GIRLFRIEND (NOT INTIMATE) | ☐ ER-EMPLOYER | ☐ OK-OTHERWISE KNOWN |
| ☐ NE-NEIGHBOR | ☐ CF-CHILD OF BOYFRIEND/GIRLFRIEND (NOT INTIMATE) | ☐ ST-STRANGER | ☐ VO-VICTIM IS SUSPECT |

### VICTIM #

**TYPE OF VICTIM**

| | | | |
|---|---|---|---|
| ☐ A-ADULT | ☐ B-BUSINESS | ☐ F-FINANCIAL INSTITUTION | ☐ L-LAW ENFORCEMENT OFFICER | ☐ U-UNKNOWN |
| ☐ J-JUVENILE | ☐ G-GOVERNMENT | ☐ R-RELIGIOUS ORGANIZATION | ☐ S-SOCIETY/PUBLIC | ☐ O-OTHER |

**LINKED TO OFFENSE #**

☐ 1 ☐ 3 ☐ 5 ☐ 7
☐ 2 ☐ 4 ☐ 6 ☐ 8

**NAME/ ALIAS**

**STATEMENT OBTAINED**

☐ NO ☐ YES, ATTACHED

**RACE**

☐ W-WHITE
☐ B-BLACK
☐ I-AMERICAN INDIAN/ ALASKAN NATIVE
☐ A-ASIAN/ PACIFIC ISLANDER
☐ U-UNKNOWN

| ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|
| | | | |

| PHONE | CELL | EMAIL | STATE ID OR DRIVER'S LICENSE # |
|---|---|---|---|
| | | | |

| DOB | AGE | SEX | HEIGHT | WEIGHT | HAIR | EYES | SOCIAL SECURITY NUMBER |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

**ETHNICITY**

☐ HISPANIC
☐ NON-HISPANIC ORIGIN
☐ UNKNOWN

**RESIDENT STATUS**

☐ RESIDENT
☐ NON-RESIDENT
☐ UNKNOWN

**ADDITIONAL VICTIM(S)**

☐ YES – SEE ATTACHMENT

**INDICATE THE VICTIM'S INJURIES FOR THESE OFFENSES**

KIDNAPING
FORCIBLE RAPE
FORCIBLE SODOMY
SEXUAL ASSAULT W/ OBJECT
ROBBERY

FORCIBLE FONDLING
AGGRAVATED ASSAULT
SIMPLE ASSAULT
EXTORTION/BLACKMAIL

☐ B-APPARENT BROKEN BONES
☐ I-POSSIBLE INTERNAL INJURIES
☐ L-SEVERE LACERATIONS
☐ M-MINOR INJURIES

☐ O-OTHER MAJOR INJURIES
☐ T-LOSS OF TEETH
☐ U-UNCONSCIOUS
☐ N-NONE

**VICTIM/ SUSPECT RELATIONSHIP – DOMESTIC**

| | | |
|---|---|---|
| ☐ SS-SPOUSE | ☐ SB-STEP-SIBLING | ☐ IP-INTIMATE PARTNER (OR EX) |
| ☐ XS-EX-SPOUSE | ☐ PA-PARENT | ☐ CF-CHILD OF INTIMATE PARTNER |
| ☐ ES-ESTRANGED SPOUSE | ☐ SP-STEP-PARENT | ☐ OF-OTHER FAMILY MEMBER |
| ☐ CH-CHILD | ☐ GP-GRANDPARENT | ☐ OH-OTHER HOUSEHOLD MEMBER |
| ☐ SC-STEP-CHILD | ☐ GC-GRANDCHILD | ☐ CS-COHABITATING PARTNER (OR EX) |
| ☐ SB-SIBLING | ☐ IL-IN-LAW | ☐ HR-HOMOSEXUAL RELATIONSHIP |

**VICTIM/ SUSPECT RELATIONSHIP – NON-DOMESTIC**

| | | | |
|---|---|---|---|
| ☐ AQ-ACQUAINTANCE | ☐ BB-BABYSITTER | ☐ EE-EMPLOYEE | ☐ RU-RELATIONSHIP UNKNOWN |
| ☐ FR-FRIEND | ☐ BG-BOYFRIEND/GIRLFRIEND (NOT INTIMATE) | ☐ ER-EMPLOYER | ☐ OK-OTHERWISE KNOWN |
| ☐ NE-NEIGHBOR | ☐ CF-CHILD OF BOYFRIEND/GIRLFRIEND (NOT INTIMATE) | ☐ ST-STRANGER | ☐ VO-VICTIM IS SUSPECT |

WVSP FORM 17-A
REV 11/2016

## REPORT OF CRIMINAL INVESTIGATION

431012685

| ATTACHMENT C: PROPERTY | | | | | | | |
|---|---|---|---|---|---|---|---|
| STATUS CODE (SC) | | | | | | NCIC ENTRY | |
| 2-BURNED<br>3-COUNTERFEIT/FORGED | D-DAMAGED/DESTROYED<br>R-RECOVERED | 6-SEIZED<br>S-STOLEN | B-STOLEN AND RECOVERED<br>F-FOUND | | | ☐ YES   ☒ NO | |
| Enter the quantity (QTY), description, victim/accused # (VIC/ACC#), status code (SC), value at loss, value at recovery and date of recovery for each property item in the columns below. Enter "VIC/ACC#" as "V1", "V2, "A1", "A2" etc. | | | | | | DATE OF ENTRY | |
| QTY | DESCRIPTION (COLOR, MAKE, MODEL & SERIAL NUMBER) | | | VIC/<br>ACC# | SC | VALUE AT LOSS | VALUE AT<br>RECOVERY | DATE OF<br>RECOVERY |

| QTY | DESCRIPTION (COLOR, MAKE, MODEL & SERIAL NUMBER) | VIC/ACC# | SC | VALUE AT LOSS | VALUE AT RECOVERY | DATE OF RECOVERY |
|---|---|---|---|---|---|---|
| 1 | One (1) metal "bowl" containing approximately one (1) gram of an unsmoked green leafy vegetation believed to be marijuana. | 1/1 | 6 | $25.00 | $25.00 | 4/19/2017 |
| 1 | West Virginia State Police Short Sleeve Uniform Shirt | 1/1 | D | $100.00 | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | **TOTAL VALUE** | | $125.00 | $25.00 | |

WVSP FORM 17-A
REV 11/2016

## REPORT OF CRIMINAL INVESTIGATION

431012685

### ATTACHMENT E:
### LIST OF EXHIBITS

| EXHIBIT # | DATE COLLECTED | TIME COLLECTED | DESCRIPTION |
|---|---|---|---|
| 1 | 04/19/2017 | 2230 | One (1) compact disc containing the dash camera video footage from April 19, 2017, at approximately 2230 hours, of S/Trooper Stepp in pursuit of a fleeing vehicle. |
| | COLLECTED BY | | |
| | S/Trooper N.S. Stepp | | |
| | LOCATION OF EXHIBIT | | |
| | File Copy of Report | | |
| 2 | 04/19/2017 | 2300 | One (1) destroyed West Virginia State Police Short Sleeve Uniform Shirt, valued at approximately $100.00. |
| | COLLECTED BY | | |
| | S/Trooper N.S. Stepp | | |
| | LOCATION OF EXHIBIT | | |
| | Returned to WVSP Procurement | | |
| 3 | 04/19/2017 | 2300 | One (1) compact disc containing twenty (20) digital photographs of the scene of this incident, Daniels Run, approximately .3 of a mile from the intersection with US Rt. 33 in Millstone, West Virginia. |
| | COLLECTED BY | | |
| | S/Trooper N.S. Stepp | | |
| | LOCATION OF EXHIBIT | | |
| | File Copy of Report | | |
| 4 | 04/19/2017 | 2300 | One (1) metal "bowl" containing approximately one (1) gram of an unsmoked green leafy vegetation believed to be marijuana. |
| | COLLECTED BY | | |
| | S/Trooper N.S. Stepp | | |
| | LOCATION OF EXHIBIT | | |
| | WVSP Clay Detachment Evidence | | |
| 5 | 04/19/2017 | 2330 | One (1) Driver History Inquiry for Joshua Michael Settle as requested by S/Trooper N.S. Stepp from the WVSP South Charleston Dispatch on April 19, 2017 at approximately 2330 hours. |
| | COLLECTED BY | | |
| | S/Trooper N.S. Stepp | | |
| | LOCATION OF EXHIBIT | | |
| | File Copy of Report | | |
| 6 | 04/19/2017 | 2330 | One (1) request for the Certified Driver's History of Joshua Michael Settle as requested by S/Trooper N.S. Stepp from the WVSP South Charleston Dispatch on April 19, 2017 at approximately 2330 hours. |
| | COLLECTED BY | | |
| | S/Trooper N.S. Stepp | | |
| | LOCATION OF EXHIBIT | | |
| | File Copy of Report | | |
| 7 | 04/19/2017 | 2300 | One (1) copy of the Crash Report, WVSP17-1731, that was completed as part of the crash investigation by TFC J.M. Ellis. |
| | COLLECTED BY | | |
| | S/Trooper N.S. Stepp | | |
| | LOCATION OF EXHIBIT | | |
| | File Copy of Report | | |
| EXHIBIT # | DATE COLLECTED | TIME COLLECTED | DESCRIPTION |
| | COLLECTED BY | | |
| | LOCATION OF EXHIBIT | | |

WVSP FORM 17-A
REV 11/2016

## REPORT OF CRIMINAL INVESTIGATION

431012685

| | ATTACHMENT F: LIST OF WITNESSES | | | |
|---|---|---|---|---|

| | NAME/ ALIAS | | STATEMENT OBTAINED | |
|---|---|---|---|---|
| **1** | **Sgt. B.L. Keefer** | | ☒ NO ☐ YES, ATTACHED | |
| | ADDRESS | CITY | STATE | ZIP CODE |
| | 5650 Big Otter Highway | Ivydale | WV | 25113 |
| | PHONE (304)587-2201 | CELL | EMAIL | STATE ID OR DRIVER'S LICENSE # |

| | NAME/ ALIAS | | STATEMENT OBTAINED | |
|---|---|---|---|---|
| **2** | **TFC J.M. Ellis** | | ☒ NO ☐ YES, ATTACHED | |
| | ADDRESS | CITY | STATE | ZIP CODE |
| | 5650 Big Otter Highway | Ivydale | WV | 25113 |
| | PHONE (304)587-2201 | CELL | EMAIL | STATE ID OR DRIVER'S LICENSE # |

| | NAME/ ALIAS | | STATEMENT OBTAINED | |
|---|---|---|---|---|
| **3** | **S/Trooper N.S. Stepp** | | ☒ NO ☐ YES, ATTACHED | |
| | ADDRESS | CITY | STATE | ZIP CODE |
| | 5650 Big Otter Highway | Ivydale | WV | 25113 |
| | PHONE (304)587-2201 | CELL | EMAIL | STATE ID OR DRIVER'S LICENSE # |

| | NAME/ ALIAS | | STATEMENT OBTAINED | |
|---|---|---|---|---|
| | | | ☐ NO ☐ YES, ATTACHED | |
| | ADDRESS | CITY | STATE | ZIP CODE |
| | PHONE | CELL | EMAIL | STATE ID OR DRIVER'S LICENSE # |

| | NAME/ ALIAS | | STATEMENT OBTAINED | |
|---|---|---|---|---|
| | | | ☐ NO ☐ YES, ATTACHED | |
| | ADDRESS | CITY | STATE | ZIP CODE |
| | PHONE | CELL | EMAIL | STATE ID OR DRIVER'S LICENSE # |

| | NAME/ ALIAS | | STATEMENT OBTAINED | |
|---|---|---|---|---|
| | | | ☐ NO ☐ YES, ATTACHED | |
| | ADDRESS | CITY | STATE | ZIP CODE |
| | PHONE | CELL | EMAIL | STATE ID OR DRIVER'S LICENSE # |

| | NAME/ ALIAS | | STATEMENT OBTAINED | |
|---|---|---|---|---|
| | | | ☐ NO ☐ YES, ATTACHED | |
| | ADDRESS | CITY | STATE | ZIP CODE |
| | PHONE | CELL | EMAIL | STATE ID OR DRIVER'S LICENSE # |

| | NAME/ ALIAS | | STATEMENT OBTAINED | |
|---|---|---|---|---|
| | | | ☐ NO ☐ YES, ATTACHED | |
| | ADDRESS | CITY | STATE | ZIP CODE |
| | PHONE | CELL | EMAIL | STATE ID OR DRIVER'S LICENSE # |

| | NAME/ ALIAS | | STATEMENT OBTAINED | |
|---|---|---|---|---|
| | | | ☐ NO ☐ YES, ATTACHED | |
| | ADDRESS | CITY | STATE | ZIP CODE |
| | PHONE | CELL | EMAIL | STATE ID OR DRIVER'S LICENSE # |

| | NAME/ ALIAS | | STATEMENT OBTAINED | |
|---|---|---|---|---|
| | | | ☐ NO ☐ YES, ATTACHED | |
| | ADDRESS | CITY | STATE | ZIP CODE |
| | PHONE | CELL | EMAIL | STATE ID OR DRIVER'S LICENSE # |

WVSP FORM 17-A
REV: 03/2016

# REPORT OF CRIMINAL INVESTIGATION

Page 1 of 3

DETACHMENT
FILE NUMBER

431012685

MODE OF
OPERATION

On Wednesday, April 19, 2017, the accused, Joshua Michael Settle, did flee from S/Trooper N.S. Stepp in a motor vehicle near the intersection of US Rt. 33 and WV Rt. 16. The accused crashed his vehicle on Daniel's Run Road in Millston, Calhoun County, West Virginia, and physically fought with S/Trooper Stepp while being taken into custody. During the fight, the accused attempted to disarm S/Trooper Stepp; however, he was unsuccessful in freeing S/Trooper Stepp's handgun from its holster.

ACTION TAKEN

On Wednesday, April 19, 2017, at approximately 2230 hours, S/Trooper N.S. Stepp, hereafter referred to as this Trooper, was conducting stationary patrol at the intersection of US Rt. 33 and WV Rt. 16 in Millstone, Calhoun County, West Virginia. At this time, this Trooper noticed a blue in color 1996 Chevrolet Cavalier, bearing WV-Registration 2PM365, traveling east on US Rt. 33, displaying a defective registration light. This Trooper then activated the emergency lights in effort to initiate a traffic stop at this location on the vehicle. The vehicle then turned north on WV Rt. 16 and began to travel towards Grantsville.

This Trooper followed the vehicle, with the emergency lights activated, for approximately .7 tenths of a mile. While following behind the vehicle, this Trooper noticed that the vehicle traveled across the northbound fog line and then across the double lined center line multiple times.

It should be noted that the driver of the vehicle had active the hazards lights and been-traveling a moderately low speed, a speed at which led this Trooper to believe that the driver was attempting to locate a wide place in the roadway to pull over. However, when the vehicle neared Daniel's Run Road, the vehicle darted left onto it and began to travel at a high rate of speed. At this time, this Trooper contacted the WVSP South Charleston Dispatch and advised that this Trooper was in pursuit of the vehicle.

After traveling approximately .3 tenths of a mile, driver of the vehicle had apparently lost control of the vehicle and ultimately flipped onto its top and came to rest upside down in the ditch line facing east.

This Trooper then exited the patrol vehicle, and began to give the driver of the vehicle, later identified as Joshua Michael Settle, verbal commands to exit the vehicle. After Mr. Settle, the accused, was out of the vehicle, this Trooper then attempted to restrain him and affect the arrest. It was at this time that the accused began to resist this Trooper by refusing to comply with the verbal commands to place his arms behind his back.

The accused then began to attempt to stand up, while this Trooper was applying pressure to him to keep him on the ground. After several attempts, the accused was able to successfully break free from this Trooper's hold on him and stood up. The accused then began to attempt to pull away from this Trooper after successfully placing one (1) handcuff on him.

During this time, this Trooper gave the accused countless number of verbal commands to stop resisting this Trooper and to comply with the commands. This Trooper first attempted to deliver to the accused several open handed strikes to his torso in order to gain control of him. This Trooper quickly discovered that these strikes were not affecting the accused and that he was still continuing to try to pull away from this Trooper.

# REPORT OF CRIMINAL INVESTIGATION

This Trooper then administered two (2) one (1) second bursts of OC Spray to the accused facial area. After the second burst, the accused was still continuing to fight with this Trooper with even more rage. It was at this time that the accused began to strike this Trooper with his left arm and fist in attempts to break free from this Trooper's grip all while screaming for this Trooper to let him go and to stop being mean to him.

The accused's actions caused this Trooper to be pulled approximately one hundred (100) feet from this Trooper's patrol vehicle. This Trooper then began to administer several strikes to the thigh region of the accused's legs with the ASP baton. After each strike, the accused appeared to only get more agitated. The accused then pulled into this Trooper and grabbed this Trooper around the torso. At this time, the accused began to drag this Trooper to the ground. This Trooper was able to regain his footing and stood back up with the accused. This Trooper continued to administer strikes with the ASP baton to the accused's legs.

After several minutes of fighting this way, the accused was able to grab this Trooper by the shirt and began to pull this Trooper again to the ground. After the shirt of this Trooper ripped, the accused began to pull on this Trooper's gun belt. The accused began to pull on this Trooper's holster and was able to successful unclasp the restraint to the gun while beginning to pull on the handle of this Trooper's pistol.

This Trooper was beginning to feel a high level of fatigue at this time of the fight. This fatigue, coupled with the fear of the accused being successful in his disarming attempt, in addition to the apparent fact of the ASP baton strikes to the legs being ineffective, caused this Trooper to transition the strikes to the head of the accused.

This Trooper delivered two (2) or three (3) strikes to the head of the accused in a desperate attempt to stop the fight and keep him from succeeding in pulling this Trooper's gun from the holster.

After physically fighting with the accused for approximately fifteen (15) minutes, this Trooper was able to get him under control and secure him in restraints.

This Trooper then placed the accused under arrest for Defective Equipment, Fleeing in a Motor Vehicle, Obstructing a Police Officer, Battery on a Police Officer, Attempting to Disarm a Police Officer and Destructing of Property.

A copy of this Trooper's patrol vehicle's dash camera footage is attached to the file copy of this report via a compact disc (Exhibit 1). A copy of the photographs that were obtained on scene were, which also document this Trooper's destroyed uniform (Exhibit 2), is attached to the file copy of this report (Exhibit 3).

Due to injuries which the accused had sustained as a result of the confrontation, the accused was transported to the Charleston Area Medical Center General via HealthNet for treatment of his injuries. It should be noted that once arriving at General, he was met by Sgt. Keefer and remained in police custody until he was released at 0230 hours.

After being released, he was then transported to the WVSP South Charleston Detachment for processing. Upon completion he was transported to South Central Regional Jail to be housed until the Calhoun County Magistrate Court resumed session.

## REPORT OF CRIMINAL INVESTIGATION

It should be noted, that after the accused was transported from the scene to receive medical attention, this Trooper began to search the vehicle in efforts to locate some kind of identification for the accused due to not knowing who he was at this time. Upon searching the vehicle, this Trooper located a one (1) metal "bowl" containing approximately one (1) gram of unsmoked green leafy vegetation believed to be marijuana in the vehicle (Exhibit 4). This item was seized for evidentiary purposes and was later photographed and placed into the WVSP Big Otter Detachment Temporary Evidence for the purpose of this investigation.

This Trooper was also able to discover a Social Security Card for Joshua Michael Settle inside of the vehicle. This Trooper then contacted the WVSP South Charleston Dispatch in efforts to locating a Driver's History on Joshua Michael Settle in efforts to locating his DMV Photograph which is attached to the Driver's History to positively identify the accused.

This Trooper was then shortly advised by the WVSP South Charleston Dispatch that Joshua Michael Settle of 749 Sam's Run Road in Looneyville, West Virginia, was currently Suspended with two (2) prior convictions for Driving Suspended on September 08, 2016 and January 20, 2017. A copy of this inquiry, as well as a request for a Certified Driver's History is attached to the file copy of this report (Exhibit 5, 6)

This trooper then added Possession of Marijuana less than 15 grams was Driving Suspended III Offense to the list of charges that the accused was originally charged with.

It should be noted that TFC J.M. Ellis arrived on scene at approximately 2300 hours and completed the crash investigation portion of this investigation. As part of the crash investigation, TFC Ellis completed the Uniform Crash Report, described as WVSP17-1731, which is also attached to the file copy of this report (Exhibit 7).

As part of the felony investigation and combative nature of the accused, a WVIX was completed, as well as a SIX.

Upon submission of this initial report, the status of this investigation is complete due to the arrest of the accused, Joshua Michael Settle.

S/Trooper N.S. Stepp
West Virginia State Police
Troop4, Clay Detachment

COPY TO       The Superintendent
              Prosecuting Attorney
              Detachment Files

CI#7310-101146
Joshua M. Settle
Driving Suspended 2nd
01/14/2017.

1/18/17

RPS

---

State of West Virginia Uniform Citation NO: **100- 2087165**

The undersigned, being duly sworn, upon his oath deposes and says:

On Saturday The **14** Day Of **Jan** **2017** At **1955** Hours

Name: **Settle** **Joshua** **Micheal**

Address: **749** **Sims Run Rd**

City: **Looneyville** State: **WV** Zip Code: **25259**

Driver License Type:
- Driving License
- Instruction Permit
- GDL Level 1 / GDL Level 2 / GDL Level 3
- CDL / CDL Instruction Permit
- Motorcycle Only
- Motorcycle Instr Permit
- Other:

Driver License Number: **F099581** State: **WV** Date of Birth **01/10/98**

Gender: M / F Weight **175** Height **6 Ft 0 In.** Eye Color **GN** E

License Plate Number **7XY781** State **WV** Photo Class **A** Vehicle Identification Number (VIN): **JS2YB413575110082**

Make **Suzuki** Year **07** Body Style **4dr** Model **SX4** Color **Orange**

Owner / Lessee Name: Same as Violator **Tymes or Charlotte KDHS**

Address: **3734 Nicut Rd.** City: **Orma** State: **WV** Zip Code: **25268**

Fatality  Complete Only for Commercial Motor Vehicles

CMV Type (Check 1): Veh Designed to Carry 16+ Passengers / Haz Mat / Other CMV

Coal Resource Transportation Sys.

DOT / Carrier # | Bill of Lading | Shipper ID # | Permit #

In or Near: **Calhoun County** **Grantsville Municipality**

Highway Type: Route Number **5** Milepost Direction of Travel **E**

Interstate / County / GPS Coordinate: Lat / Long

US / City Street / Street Name:

WV / Other

Specific Reference / Landmark **Chans Parking lot**

Charge #1: (Select Only 1 Violation per Charge) **Driving Suspended 2016**

Charge #2: **No proof of Insurance**

In Violation of **17B-4-3 (a)** WV State Code

In Violation of **17D-2b-3** WV State Code

Agency/Detachment or Unit Name **WVSP Glenville**

Officer's Name (Please Print) **T.A. Whited**

VIOLATOR RESPONSIBILITY

I Understand that I Have to Appear, On or Before, **01/25/17**

Court Name and Address **Grantsville Mag Court**

Court Phone **304-354-6841**

FOR COURT USE ONLY

| Charge 1 Disposition: | Code | Charge 2 Disposition: | Code |
|---|---|---|---|
| 01 Not Guilty | 06 Nolo Contendre | 01 Not Guilty | 06 Nolo Contendre |
| 02 Forfeited Bail | 07 Guilty | 02 Forfeited Bail | 07 Guilty |
| 03 Tried in Absence | 08 Prelim. Hearing | 03 Tried in Absence | 08 Prelim. Hearing |
| 04 Nolle Prosequi | 09 Change of Venue | 04 Nolle Prosequi | 09 Change of Venue |
| 05 Appealed to Higher Court | 10 Dismissed | 05 Appealed to Higher Court | 10 Dismissed |

R DMV USE ONLY  Court Code  Conviction Code 1  Conviction Code 2

**COMPLAINT - AFFIDAVIT**



331010146

# EXHIBIT 3





















# EXHIBIT 4

Copy
WVSP PSS
#176049



**ACTION**
DISCOVERY SERVICES OF W
124 CAPITOL ST.
ESTON WV 25

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**AT CHARLESTON**

JOSHUA M. SETTLE,                        )
                                         )
            Plaintiff,                   )
                                         )
v.                                       )        Civil Action No. 2:18-cv-01177
                                         )        Judge John T. Copenhaver, Jr.
NATHAN SCOTT STEPP,                      )
Individually as a member of the         )
West Virginia State Police,              )
                                         )
            Defendant.                   )
                                         )

## CERTIFICATE OF SERVICE

The undersigned counsel for defendant, Nathan Scott Stepp, individually and as a member of the West Virginia State Police, does hereby certify on this 24th day of October, 2018, that a true copy of the foregoing *"Defendant Nathan Scott Stepp's Response to Plaintiff's First Interrogatories, Request for Production of Documents, and Request for Admissions to Defendant Nathan Scott Stepp"* was served upon counsel of record via U.S. Mail as follows:

> Russell A. Williams, Esq. (WVSB #12710)
> Eric J. Buckner, Esq. (WVSB #9578)
> KATZ, KANTOR, STONESTREET & BUCKNER, PLLC
> 112 Capitol St., Suite 100
> Charleston, WV 25301
> Telephone: (304) 431-4053

Gary E. Pullin, Esq. (WVSB #4528)
Wendy E. Greve, Esq., (WVSB #11045)

**Pullin, Fowler, Flanagan, Brown & Poe, PLLC**
JamesMark Building
901 Quarrier Street
Charleston, West Virginia 25301
Telephone: (304) 344-0100
Facsimile: (304) 342-1545
E-Mail: gpullin@pffwv.com; wgreve@pffwv.com

- 15 -